GEORGE THOMAS *vs.* WILLIAM FRANK FORD.

*Bills of Exception—Ground for Refusal to Dismiss an Appeal—Public way—User for Twenty years—Presumptive dedication—Navigable river—Public landing—Proprietary rights of the Owner of the Soil of an ordinary Highway.*

In the absence of a special rule of Court prescribing the time for preparing bills of exception, the general rule of practice is, that the exception must be taken and noted at the time of the ruling made; but the reduction of the exception to form may and should be deferred to some more convenient time after the trial, but during the same term of Court, when the exception should be presented for the signature and seal of the Judge.

Delay in the preparation of an exception ought never to be allowed beyond the duration of the term of the Court at which the trial takes place, except it be by the express permission of the Court given during the term.

If an exception be presented to the Judge after the term, and without an order for the extension of time, he can only sign the exception by the consent of the parties.

Where it appears that it was by the consent of the parties that a bill of exception was signed by the Judges at the time it was actually signed by them; that the attorneys of the appellee participated actively in settling the facts of the exception, and had incorporated therein such facts as they desired; and that it was at their instance that the exception was submitted to the three Judges for their correction and approval; and all this without the slightest intimation that they were objecting, or intended to raise an objection, to the right or power of the Judges to sign the exception, thus prepared and presented, the appeal will not be dismissed on the ground that the bill of exception was not signed in due time, such objection being raised for the first time in the Appellate Court.

The existence of a public way may be established by evidence of an uninterrupted user by the public for twenty years; the presumption being that such long continued use and enjoyment by the public of such way had a legal rather than an illegal origin.

At the common law, however, the principle of presumptive dedication, or *quasi* prescription, does not apply to give rise to a right in

the general public to use the land of an individual on a navigable river, as a public landing, and place of deposit of wood and other articles of property for an indefinite time.

The existence of an ordinary highway over the land of an owner, whether it had its origin by condemnation, dedication or prescription, does not divest him of the property in the soil. In such case he has full dominion and control over the land, subject to the easement in the public, and he may recover it in ejectment, or bring an action for trespass against any person who deposits wood, stones or rubbish upon the soil, or otherwise infringes upon the ordinary proprietary rights of the owner of the soil, in a manner not in the use of the easement as a highway.

APPEAL from the Circuit Court for St. Mary's County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, and BRYAN, J.

*B. Harris Camalier*, and *Daniel R. Magruder*, for the appellant.

*Daniel C. Hammett*, and *Frank. H. Stockett*, for the appellee.

ALVEY, C. J. delivered the opinion of the Court.

Under the peculiar circumstances of this case, we think the motion to dismiss the appeal ought not to prevail. The appeal was taken on the 26th of March, 1884, and the bill of exception, though signed as of the 22d of March, 1884, was not in fact signed and filed in the cause until the 2d of May, 1884. The case had been tried at the preceding September term of the Circuit Court, and that term, and the following December term, had been allowed to expire before the bill of exception was signed. This delay in having the bill of exception prepared would, but for what appears to have been an assent on the part of the appel-

lee to having it signed by the Judges, have deprived the appellant of the benefit of the exception taken at the trial.

It does not appear that there was any rule of the Circuit Court prescribing the time for preparing bills of exception; and in the absence of any such special rule upon the subject, the general rule of practice is, that the exception must be taken and noted at the time of the ruling made; but the reduction of the exception to form may and should be deferred to some more convenient time after the trial, *but during the same term of Court,* when the exception should be presented for the signature and seal of the Judge. *Wheeler vs. Briscoe,* 44 *Md.,* 308, 311. Delay in the preparation of the exception ought never to be allowed beyond the duration of the term of the Court at which the trial takes place, except it be *by the express permission of the Court given during the term.* If the exception be presented to the Judge after the term, and without an order for the extension of time, he can only sign the exception by the consent of the parties. 44 *Md.,* 312. For as it has been well said, it would be dangerous to allow a bill of exception of matters depending upon memory to be made up at a distant period, when the facts may not be accurately recollected; and the Judge should not allow this to be done. Indeed the difficulty that appears to have occurred in settling the exception in this case, consequent upon the delay that was allowed to occur, furnishes ample illustration of the wisdom of the rule that requires the exceptions to be prepared as soon after the trial as practicable, or at any rate during the term. Here, however, it would appear that it was by the consent of the parties that the exception was signed by the Judges at the time it was actually signed by them. The attorneys of the appellee participated actively in settling the facts of the exception, and had incorporated therein such facts as they desired; and it was at their instance that the exception was submitted to the three Judges for their correction

and approval; and all this without the slightest intimation that they were objecting, or intended to raise an objection, to the right or power of the Judges, to sign the exception, thus prepared and presented. After what has occurred, we think it is too late to raise the objection in this Court for the first time. If the objection had been taken before the exception was signed, we take it for granted the Judges would have withheld their signatures, as they could and should rightly have done. And as to the delay in making up and transmitting the transcript of the record to this Court, that would plainly appear to be attributable to the fault or omission of the clerk. The motion to dismiss the appeal must, therefore, be overruled.

And having disposed of the motion to dismiss the appeal, we come now to consider the questions raised on the trial of the cause.

The action is for an alleged trespass *quare clausum fregit.* And the grievance alleged, in addition to the breaking and entering the close, is, that the defendant encumbered the land of the plaintiff, along the shore of the river Patuxent, by piling a large quantity of cord wood thereon, whereby the plaintiff was deprived of the use and enjoyment of the land thus encumbered by the wood.

At the trial the plaintiff asked three instructions from the Court to the jury, and the defendant asked none. The first and second prayers were granted as modified by the Court, and the third was refused, without any substituted instruction therefor. The first prayer as offered asked the Court to instruct the jury, that if they found the defendant to be guilty of the acts of trespass complained of, then the plaintiff was entitled to recover, as the measure of damages, such a sum per cord as the jury might find *such use and occupation of the land was worth;* "and such *further* damages as they might find the plaintiff had suffered by such use and occupation of the said shore." This prayer was granted, with the omission of the last clause, in respect to *further* damages.

The second prayer as offered was, that though it might be found as a fact that other persons besides the defendant deposited wood and other things upon the river shore on the land of the plaintiff, the *locus in quo,* such acts of other persons afforded no justification to the defendant; such acts of user not being sufficient to constitute the said shore *a public landing ;* and that there was no sufficient evidence to establish the existence of a *public landing, with definite limits.* This prayer as offered was rejected; but in lieu thereof the Court instructed the jury, that such acts or user of third persons would afford no justification to the defendant, "unless the jury should further find that such user of said land was adverse to the claim of the plaintiff, and those under whom he claimed, exclusive and uninterrupted, for at least twenty years, and that such user was within reasonably defined limits."

The third prayer asked that the jury be instructed, that in estimating the damages no deduction should be made by reason of the fact that some portion of the wood deposited was piled or corded "upon the bed of the public road running through the land of the plaintiff along the said river shore." This prayer was rejected by the Court, and no instruction was given in lieu thereof.

It is upon these prayers as offered, and the instructions actually given, that the questions arise on this appeal.

The plaintiff's land, known as "Mattaponi," bounds on the Patuxent river for a considerable distance; and through this land there runs a public county road to a wharf owned by the plaintiff on the river, and from the wharf the road runs up and along the shore of the river for some distance before leaving the land of the plaintiff. Just immediately below the wharf, and on the right of the road approaching the same, there is a public landing regularly laid out by public authority, within fixed and definite bounds, but which space does not include any part of the *locus in quo.* Between the road running up

Thomas vs. Ford.

the shore from the wharf, and high-water mark on the beach of the river, there is a slip or narrow space of ground belonging to the plaintiff, and it was upon this slip or space, and upon a part of the ground embraced within the limits of the public road, that the alleged acts of trespass were committed. The defendant offered evidence tending to prove that the shore above the wharf, for the distance of eighty to a hundred yards, had been used for many years, by many persons, for purposes of shipping cord wood and other freight, and that such user was without objection on the part of the plaintiff, though known to him; and further, that there were no marks or bounds to separate or define the portion of the shore that had been so used by shippers, from the other parts of the shore on the plaintiff's land—the space occupied by the cord wood of the defendant being the space between the river shore and the public road, including a part of the public road, and extending from the wharf up the shore for a distance of from eighty to one hundred yards. The defendant also offered evidence to prove that part of the wood so corded by him was upon the bed of the public road that runs through the plaintiff's land down to the wharf and along the river shore.

The defence in the case is founded upon the theory that, in addition to the public landing regularly laid out and defined below the wharf, by statutory authority, the space intervening between the margin of the river, and the public road above the wharf, has become a part of the public landing, with the right in the public to make deposits of articles of freight thereon, and that such right has been acquired either by prescription, or by dedication to public use. If the right has not been acquired in one or the other of these modes, the defendant has no justification for the alleged trespass committed by him.

It is certainly a settled doctrine in this State that public roads or ways of any kind, can only be established by

public authority, or by dedication, or by long user by the public, which, though not strictly prescription, yet bears so close an analogy to it, that it is not inappropriate to apply to the right thus acquired the term prescriptive. Hence the existence of a public way may be established by evidence of an uninterrupted user by the public for twenty years; the presumption being that such long continued use and enjoyment by the public of such way had a legal rather than an illegal origin. *Day vs. Allender,* 22 *Md.,* 511. But the question here is, whether, at the common law, this principle of presumptive dedication, or *quasi* prescription, does or can properly apply to give rise to a right in the general public to use the land of another on a navigable river as a landing-place and place of deposit of wood and other articles of property for an indefinite time? That question has never been decided by this Court; though it has been the subject of a most thorough and exhaustive discussion in the Supreme Court, and in the Court of Errors, of the State of New York, and has been decided by other State Courts.

In the case of *Cortelyon vs. Van Brunt,* 2 *John.,* 357, the action was for trespass *quare clausum fregit,* and the defendant pleaded the general issue, and gave notice that he would offer in evidence a prescriptive right of fishing in the sea adjoining the *locus in quo,* and of using and occupying the shore for that purpose, the use of the shore being to erect huts thereon for the use and accommodation of the fishermen during the fishing season. But the Court held that no such right could be acquired by prescription. And in the subsequent case of *Pearsall vs. Post,* 20 *Wend.,* 111, which is the leading case upon the subject, and in which will be found reviewed all the authorities up to that date bearing upon the question, the Supreme Court of New York held, that the *public* had no right to *use* and *occupy* the soil of an individual adjoining navigable waters, *as a public landing and place of deposit* of

Thomas *vs.* Ford.

property in its transit, *against the will of the owner*, although such user had been continued for more than twenty years, with the knowledge of the owner. That such *user* could not be urged *by the public*, either as the foundation of a legal presumption of a *grant*, and thus justify a claim by prescription, or as evidence of *dedication* of the premises to public use. This case was taken to the Court of Errors, where, after the most thorough discussion, it was affirmed (22 *Wend.*, 425); and we are not aware that the decision has ever been questioned. Decisions of similar import have been made in other States, as in the case of *Bethum vs. Turner*, 1 *Greenl. Rep.*, (*Me.*,) 111; *Chambers vs. Furray*, 1 *Yeates*, 167, and *Cooper vs. Smith*, 9 *Sergt. & R.*, 26.

Indeed the very nature of the user set up in this case as evidence of the prescriptive right in, or dedication to, the public, renders it quite out of the question that such right could, upon principle, exist in the public generally. From the very nature of the user relied on it must be confined to but few individuals, and this negatives the idea of the existence of the right in the general public. Instead of the right being a mere easement or servitude, without profit in the soil, and open to the enjoyment of all alike, it would be an exclusive appropriation of the actual use of the soil to the first occupier or depositor of wood or other articles, without limit as to extent or duration of time. The claim here set up is the right in the general public to deposit and cord wood upon the plaintiff's land acquired by user merely. This, of course, must be confined to a defined or limited space. If the right were established, each individual member of the public could not enjoy it, for the first occupier would have the right to appropriate the entire space to himself, and no one could question his right in so doing. While he remained in possession all the rest of the public would be excluded; and there would be no mode of determining

the question as to the extent of the ground that might be appropriated, or the duration of time that it could be occupied; it might indeed be so occupied for an indefinite duration of time. And as was said by the Court in the case of *Cortelyon vs. Van Brunt, supra,* such user rather denotes title, and the right of exclusive enjoyment, than the enjoyment of a mere public easement; and the right to such user by the public cannot be acquired by prescription.

Professor *Washburn,* in his work *on Easements,* (3d ed.) top page 122, lays it down as settled law, that "a right like that to use a landing place upon the shore of navigable waters for depositing articles, such as wood and the like, cannot be claimed *for the public,* nor for all the inhabitants of a State, by prescription or custom." And so in *Bennett's edition of Goddard on Easements, page* 186, it is laid down that a custom for the public to use the land of another on a navigable river as a landing-place, and a place for deposit of goods, cannot be supported. And this would seem to be founded in reason and sound public policy.

As appropriate to this case, we may repeat here what was said, with great force of reason, by COWEN, J., in *Pearsall vs. Post,* that considering the great extent of shore lines within our State, and the long and uniform indulgence extended by the proprietors of those shores to those who have had occasion to use them for purposes connected with water transportation or fishing, a decision which should admit the possibility of turning such permissive enjoyment into prescriptive and absolute right on the part of the public, would open a field of litigation which no community could endure. And what is still worse in a moral point of view, it would be perverting neighborhood forbearance and kind indulgence to the destruction of important rights. Consequently, if it be once understood that this permissive indulgence of the

proprietors of the shores may be construed into irrevocable privileges, restrictions and hinderances will inevitably follow, to avoid the possibility of such permissive use maturing into public adverse rights. The production of any such consequence surely ought not to be desired by anyone.

With these views, this Court is of opinion that there was error committed by the Court below in refusing to grant the second prayer offered by the plaintiff, and in giving the instruction in lieu of that prayer.

The remaining question is, whether the plaintiff was entitled to recover any damages for the occupancy of the ground, by the cord wood of the defendant, within the limits of the public road, running up the river shore over the land of the plaintiff. This question was presented by the third prayer of the plaintiff, which was refused by the Court.

The existence of an ordinary highway over the land of an owner, whether it had its origin by condemnation, dedication or prescription, does not divest him of the property in the soil. In such case he has full dominion and control over the land, subject to the easement in the public, and he may recover it in ejectment, or bring an action for trespass against any person who deposits wood, stones or rubbish upon the soil, or otherwise infringes upon the ordinary proprietary rights of the owner of the soil, in a manner not in the use of the easement as a highway. This is a principle so familiar and so well established that it hardly needs the citation of authorities to support it. We may refer, however, to 3 *Com. Dig,* *Chimin* (*A* 2), 30; *Lade vs. Shepherd,* 2 *Str.,* 1004; *Dovaston vs. Payne,* 2 *Sm. L. Cas.,* 90, 94, 95, *and note of American Editors,* 184; *Jackson vs. Hathaway,* 15 *John.,* 447; *St. Mary Newington vs. Jacobs, L. R.,* 7 *Q. B.,* 47, 53; 3 *Kent's Com.,* 432, 433; *Washb. on Eas.* 228, 229. And such being the case, it would seem proper that the

plaintiff's third prayer should have been granted. It was simply a question as to how much such use and occupation of the ground was worth, under the circumstances of the case, or in other words, what damage was sustained by the plaintiff by reason of having the wood of the defendant piled upon his land. This is the injury to the land of which the plaintiff complains.

The judgment will be reversed, and a new trial awarded.

> *Judgment reversed, and*
> *new trial awarded.*