# THOMAS SULLENS

## *vs.*

# WILLIAM B. FINNEY.

*Deeds: restrictions in——; effect of——; restrictions by subsequent incumbrancer; holder under superior title not bound or estopped. Equitable estoppel.*

Where there is a general plan for the improvement of property, a restrictive covenant imposed by the grantor upon individual purchasers of the land, in pursuance of such a plan, is enforceable, at their instance, as against the remainder of the land.                                                              p. 656

But after the execution and delivery of a mortgage, the mortgagor, by his own act alone, has no power to impair or modify the estate conveyed, and a sale, under the mortgage, clothes the purchaser with the entire title held by the mortgagor at the time the mortgage was recorded.             p. 657

Under the principle of equitable estoppel, where one party claims to have been influenced by the conduct or declarations of another to his injury, it must appear that he himself was not only destitute of knowledge of the true state of the title, but also of any convenient or available means of acquiring such knowledge.                                                             p. 658

Where the condition of the title is known to both parties, or both have the same means of obtaining the truth, there can be no estoppel.                                                              p. 658

*Decided June 25th, 1914.*

Appeal from Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, and CONSTABLE, JJ.

*C. Alexander Fairbank, Jr.,* for the appellant.

*Charles F. Stein* and *Morrill N. Packard,* for the appellee.

URNER, J., delivered the opinion of the Court.

This is a suit by the vendor for the specific performance of an agreement for the purchase of real estate. The defense is that the title proposed to be conveyed is encumbered by certain building restrictions and is, therefore, not of the character for which the contract of sale stipulates. It was held by the Court below that the title was not open to this objection, and from the resulting decree the vendee has appealed.

The property embraced in the purchase consists of certain lots of ground forming part of a tract of land, situated in the suburbs of Baltimore, which has been developed for residence purposes under the name of "Edgecombe Park." It is shown by the record that the vendor's title was obtained in 1913 under procedings for the foreclosure of a mortgage taken by him in 1907 upon a body of land containing one hundred and twenty-five acres, a portion of which had in the interval been platted and subdivided for the development mentioned. The mortgage was executed by the Wylie Heights Company, which had just acquired the property, and it was given to secure a loan of $25,000.00 made to the company by the present appellee for application on the purchase money. There were pre-existing loans to the amount of $100,000, the payment of which the company assumed. The plat showing the subdivision of a part of the tract into

building lots, streets, avenues and alleys, and indicating the building line for the houses to be erected, was placed on record in 1908. There were three hundred and thirty-eight lots included in the development. Seventy-nine of them had been sold prior to the foreclosure of the mortgage. In the deeds for sixty-nine of the lots so disposed of were uniform covenants and agreements to the effect that the premises should be used solely for residence purposes; that only one dwelling should be built on each lot; that residences erected thereon should cost not less than $5,000.00, and should be located on the building lines established by the grantor company, and according to plans, including exterior color scheme, by it approved; that no stable or other outbuildings should be constructed, and no wall or fence, except hedges, should be maintained on the lots conveyed, without the company's consent in writing; that after proper sewerage disposal had been provided by the company no cesspools should be maintained, and that no swine should be kept and no nuisances of any kind should be permitted on the premises; that the grantee, and his heirs and assigns, should pay fifty cents per month for each lot for the maintenance of the sewerage system to be connected with the property, until such time as it shall be served by the sewerage system of Baltimore. It was provided in each of the deeds by which the sixty-nine lots in question were conveyed that the covenants and agreements we have indicated should run with and bind the lots respectively granted until January 1st, 1930, when they should terminate. There was no covenant by the grantor company to hold or convey the remaining lots in the development subject to the same restrictions. In the conveyance of the other ten lots included in the seventy-nine which were sold before the appellee obtained his title by foreclosure of the mortgage to which we have referred, there were two instances in which the only conditions imposed were against the sale of spirituous or malt liquors, three in which the deeds contained covenants similar to those applied to the

sixty-nine lots except as to the cost of the buildings, and there was a deed for five lots which was without any restrictions. Ten houses have thus far been erected in the development. The remaining two hundred and forty-nine platted lots, and the whole of the undeveloped portion of the original one hundred and twenty-five acre tract, have passed to the appellee under foreclosure of a mortgage which antedated the deeds for the seventy-nine lots sold other parties and which contained no limitations whatever upon the use of the property. In the meantime the title of the Wylie Heights Company had been transferred to the Edgecombe Park Company by an absolute and unrestricted conveyance. Exceptions to the sale under which the appellee acquired the property were considered, and the action of the lower Court overruling them was affirmed in *Edgecombe Park Co.* v. *Finney,* 121 Md. 320.

The appellant's objection to the title offered him by the appellee, as to the lots covered by the agreement of purchase involved in this suit, arises from the anticipation that the owners of lots which have been sold subject to restrictions may insist upon the observance of similar conditions in the use of the remaining lots embraced in the same development. This apprehension is said to be justified by the rule that where there is a general plan for the improvement of property, a restrictive covenant imposed by the grantor upon the individual purchasers of the land, in pursuance of such a plan, is enforceable at their instance as against the remainder. *Summers* v. *Beeler,* 90 Md. 474; *Safe Deposit Co.* v. *Flaherty,* 91 Md. 489; *Peabody Heights Co.* v. *Willson,* 82 Md. 186; *Halle* v. *Newbold,* 69 Md. 265; *Thruston* v. *Minke,* 32 Md. 487; *Foreman* v. *Sadler,* 114 Md. 574; *Wood* v. *Stehrer,* 119 Md. 143. It is not denied that ordinarily this rule would be unavailing to affect a title which, like the present, has been acquired from the common grantor before the plan of improvement was inaugurated, or any of the rights for whose protection it is invoked were created.

It is, of course, perfectly clear that after the execution and delivery of the mortgage it was beyond the power of the mortgagor, by his own act, to impair or modify the estate conveyed, and that the sale under the mortgage invested the purchaser with the entire title held by the mortgagor at the time the instrument was recorded. *Duval* v. *Becker,* 81 Md. 537-548; *Felgner* v. *Slingluff,* 109 Md. 480; *Code,* Art. 66, sec. 11. But it is urged that under the special circumstances of this case, the mortgagee, who has since become the owner in fee, is estopped to deny that the remaining lots are subject to the same restrictions as those mentioned in the deeds for the lots owned by other purchasers. In support of this theory our attention is called to evidence showing that at the time the mortgage to the appellee was executed he became the general manager of the mortgagor company under an agreement in writing which provided that in consideration of his loan of $25,000.00 to the company being made without interest, he should be entitled to receive one-half of all the net profits which the company might make thereafter in the sale of the mortgaged lands, and that until the whole should be disposed of and the profits therefrom divided, the company would employ the appellee as its general manager without salary and would do no act in reference to the development and sale of the lots without his approval. It was stipulated that upon the payment of $5,000.00 per acre, to the mortgagee, areas of not less than an acre could be released from the lien of the mortgage. The seventy-nine lots conveyed prior to the foreclosure were so released, but only $1,000.00 seems to have been paid on account of the mortgage debt. On April 16, 1910, the company executed another mortgage to the appellee securing a loan of $5,720.00, and at the same time it was agreed in writing that the appellee's rights under the agreement of 1907 should be relinquished and, in lieu of a share of the profits, he should receive four per cent interest on the $25,000.00 loan until its maturity. It appears that the appellee was at no time interested in the company

either as director or stockholder. His connection with it as general manager ceased at the time of the second agreement to which we have just referred. According to the record his acts as manager were always controlled by the board of directors.

If it be assumed that the evidence sufficiently shows the existence of a general plan for the improvement of the land, we can have no doubt upon the facts before us that the appellee's title is nevertheless superior to the operation of the restrictive covenants by which it is supposed to be affected. His rights as mortgagee were of record, and notice of their existence and extent must be imputed to every subsequent purchaser. It has been held to be essential to the application of the doctrine of equitable estoppel with respect to the title to real estate "that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. Where the condition of the title is known to both parties or both have the same means of ascertaining the truth, there can be no estoppel." *Brant* v. *Va. Coal & Iron Co.,* 93 U. S. 337; *Park Asso.* v. *Shartzer,* 83 Md. 13. There is nothing in the record to suggest the idea that any of the purchasers of lots were in fact led by any conduct on the part of the appellee to believe that he was thereby subordinating to their interests the estate secured by his mortgage. It was doubtless supposed by all parties concerned that the covenant for the payment of the mortgage debt would be performed. But those who may have purchased lots with the expectation that the restrictive covenants contained in their deeds would be extended to the entire development must be presumed to have contracted with reference to the possibility of a default and foreclosure under the existing mortgage. There is evidence without contradiction that the remaining land would be practically unmarketable if subjected to the restrictions set forth in the

deeds for the sixty-nine lots. The record does not justify a conclusion which would thus prejudice the appellee's interests.

The case of *Peabody Heights Co.* v. *Willson,* 82 Md. 186, to which the appellant has specially referred, was altogether different in its facts from the case at bar. There the restrictions were expressly imposed, by agreement between the original vendor and vendee, upon the whole body of the land acquired for development, and the question was whether they were intended merely for the benefit of the vendor, or were provided also for the common advantage of all purchasers and would, therefore, be binding upon a grantee with notice of their terms.

In our opinion the title proposed to be conveyed to the appellant under his contract of purchase is free from the infirmity which he suggests, and as it was not questioned on any other ground, the decree for specific performance was properly passed.

*Decree affirmed, with costs.*