TONEY SCHLOSS PROPERTIES CORPORATION
*v.* BERENHOLTZ, et al., AND SILBERT, et ux.
*v.* TONEY SCHLOSS PROPERTIES
CORPORATION

[No. 352, September Term, 1965.]

198

*Decided June 22, 1966.*

The cause was argued before Prescott, C. J., and Hammond, Horney, Marbury and McWilliams, JJ.

*M. Peter Moser,* with whom were *Ronald P. Fish* and *Nyburg, Goldman* and *Walter* on the brief, for Toney Schloss Properties Corporation.

*Solomon Kaplan* and *R. Taylor McLean,* with whom were *Royston, Mueller, Thomas & McLean,* on the brief, for Sol C. Berenholtz, et al. and Fred Silbert, et ux.

McWILLIAMS, J., delivered the opinion of the Court.

This dispute concerns the ownership of a small triangle of land (2262 sq. ft.) and the extent to which its owner may be limited in using the same. On one side we have Fred Silbert and his wife, Lucille (Silbert). On the opposite side is Toney Schloss Properties Corporation (Schloss Corp.). Judge Raine's decree satisfied neither side so both have appealed.

Since a proper understanding of the contentions of the parties is virtually impossible without reference to plats, we have provided three, which are appended hereto. The first is a segment of the "preliminary subdivision plat" dated 15 January 1957. Next is part of the plat of Section 2, dated 23 January 1958. The third is part of the plat of Section 4, dated 25 November 1958. To the last mentioned two plats we have made obvious additions which, it is hoped, will make them more easily understood.

In the early Fifties Dan and Jerry Schloss (D & J) acquired 97 acres in the Third District of Baltimore County just north of what was to become (ten years later) the Baltimore Beltway. Plans for the utilization of the tract were crystallized during 1956 and by the end of the year the preliminary subdivision plat had been completed. It will be observed that this is a topographical survey upon which have been superimposed streets, building lots, easements for utilities and the location of drainage structures. The project was graced with the name "Stevenson Ridge."

In February 1957 D & J sold most of the tract to a developer known as Sherwood Acres, Inc. (Sherwood). The contract (as particularized by the purchase money mortgage dated 1 May 1957) required the buyer, among other things, to prepare subdivision plats "in substantial conformity" with the 15 January 1957 plat. The mortgage was assigned forthwith to Schloss Corp., of which D & J are the principal owners.

During the balance of 1957 and all of 1958 Sherwood and Marcie Homes, Inc. (Marcie) (related companies) prepared

the subdivision plats and concluded the customary negotiations with Baltimore County. One of the requirements of the county government was the fee simple conveyance to it of an area which, on the plats, is designated "Flood Control Reservation." The deed (16 February 1959) to the county, in which Schloss Corp. joined, conveys *"two* parcels of land which are shown indicated, 'Flood Control Reservation' on the Subdivision Plat of *Section 4* Stevenson Ridge." (Emphasis supplied.) It should be remembered, and we shall have more to say about its significance, that there is only *one* parcel so designated on the plat of Section 4.

Silbert acquired his property in August 1959. Eugene K. Lewis bought his in March 1960. Sol C. Berenholtz became their neighbor in August 1960. Lewis and Berenholtz were parties in the trial court. They did not appeal.

In May 1962 Schloss Corp. foreclosed its mortgage. The assignee's public notice announced that he would sell, on 11 June 1962, a·tract containing 16.8726 acres, 10 small parcels and the beds of certain roads and streets. The 16 acre tract lies to the south of the properties of Silbert, Lewis and Berenholtz. The small triangle, the ownership and use of which is our present concern, is one of the 10 smaller parcels described in the advertisement of sale. The assignee sold the property (including the 16 acre tract and the triangle) to Schloss Corp. and in due course the sale was ratified. The assignee's deed to Schloss Corp. was recorded 22 August 1962.

As originally planned, access from the public roads to the 16 acre tract was to be obtained through the property of Gordon Sugar which adjoins Stevenson Ridge on the west. The preliminary subdivision plat clearly indicates that the only access from the public roads to the lots there shown is by way of Split Rock Court which, after leaving Stevenson Ridge, must necessarily run through the Sugar property in order to get to the highways. Since Schloss Corp. was anxious to dispose of these lots, the obvious, and perhaps only, customer was Mr. Sugar. To make the lots more attractive to him, Schloss Corp. sought to have the zoning classification changed from R.40 (1 acre lots) to R.20 (½ acre lots), which was the classification which applied to Sugar's property. The details of the attempt,

which was unsuccessful, are fully set forth in *Greenblatt v. Toney Schloss,* 235 Md. 9, 200 A. 2d 70 (1964).

Shortly after our decision in *Greenblatt, supra,* Schloss Corp., being unwilling to await the development of Sugar's land, conceived the notion of obtaining access to the 16 acre tract (which had by this time been augumented by about 8 landlocked acres just south of the 16 acre tract and abutting the Beltway) by building a road which would extend southwesterly from Marcie Drive in the vicinity of Silbert's lot. "In the summer of 1964" Dan Schloss went to see Silbert. As related by Silbert "he [Schloss] * * * told me that he owns a certain small triangle, which I thought was on my lot. * * * he wanted to buy my land or pay me for the privilege of using part of my land to get a road back into his land * * * and he said the triangle that he owned was not sufficient * * *. [He also said] he would give me a $5,000 profit for the purchase of my entire home."

Silbert said he was "amazed." He told Schloss he "thought it [the triangle] belonged to [him] * * *." After talking it over with his wife, Silbert declined the offer.

Shortly thereafter Schloss Corp. asked the county authorities to approve revised plans for the area (now totaling 23 acres). The plans indicated that access would be obtained by a road to be built from Marcie Drive over the triangle and continuing over a portion of the "Flood Control Reservation." Upon hearing of this Silbert, Lewis and Berenholtz objected and on 23 October 1964 they filed a bill of complaint seeking a declaration that Silbert owned the triangle and an order enjoining Schloss Corp. and the county from processing or approving any plan making use of the triangle or the Flood Control Reservation to provide access to the 23 acres. Later counsel for the parties filed a stipulation "that the County and Mr. Gavrelis [Director, Office of Planning and Zoning] may, without prejudice to any rights of the Complainants, process the proposed plan for the development of the subject property, even to the point of tentative approval of such plans, upon the express understanding that no final approval shall be granted until the proceedings in this case are terminated." The hearing before Judge Raine took place on 28 April 1965. Some additional evidence was produced on 15 June 1965 immediately after which the court's decision was announced.

Judge Raine, in his decree, held that the triangle is a part of the Flood Control Reservation and that the legal title thereto is in Schloss Corp. Also he enjoined Schloss Corp. from building a road thereon or using it for any purpose other than as a Flood Control Reservation. Schloss Corp. appealed from the whole decree. Silbert appealed from that portion of the decree declaring Schloss Corp. to be vested with legal title to the triangle.

Schloss Corp. has no quarrel with Judge Raine's finding that it has legal title to the triangle. It contends, however, that the triangle is not a part of the Flood Control Reservation. It contends, also, that the trial court's injunction against *any* use of the triangle, except as a Flood Control Reservation, is erroneous. Silbert contends the triangle belongs to him and that unless the injunction against Schloss Corp. is sustained, the value of his property will be diminished. The latter contention was made by Lewis and Berenholtz also in the trial below.

## I.

Silbert contends there is an ambiguity in the plat of Section 2 which creates doubt as to whether the triangle is a part of Lot 5. This being so, he argues, it becomes necessary, in order to construe the conveyance, to determine the intention of the parties. If their intention cannot be resolved, he continues, then the conveyance must be construed against the grantor.

We are not aware of any ambiguity in the plat of Section 2. The S 29° 40' 30" E 90.52' line (the SW side of the triangle) is obviously one of the boundaries of Lot 5 (and as well a boundary of the triangle). If that were not so, there would be no reason for putting it there and much less for indicating its direction and length. Moreover, William J. Sell, whose qualifications as a surveying expert were not challenged, testified that the line (S 29° 40' 30" E 90.52') was a *block* boundary as well as a lot boundary. He explained that all changes in direction in block boundaries "are indicated and shown with a bubble [very small circle]." An inspection of the plat of Section 2 reveals a "bubble" at each end of the 90.52 foot line. There is no doubt, he said, that the triangle is not a part of Lot 5. No attempt was made to rebut his testimony.

Nevertheless, acknowledging, for the sake of argument, some ambiguity in the plat, we see no evidence of an intention on the part of Schloss Corp., Sherwood or Marcie to convey the triangle as a part of Lot 5. If the preliminary subdivision plat is examined with care, it will be seen that the southeastern boundary of Lot 5 (as there shown) runs from Split Rock Court in a northeasterly direction 245 feet to the southwesterly side of the Flood Control Reservation and that it is also the northwestern boundary of Lot 6.

From the intersection of the 245' line with the Flood Control Reservation the outline of Lot 5 runs 70 feet in a northwesterly direction and with the southwest side of the Flood Control Reservation to intersect the southwest side of Marcie Drive. When the 245 foot line (preliminary plat) was accurately surveyed, in connection with the preparation of the plat of Section 2, it was found to be 213.13 feet. The 70 foot line (preliminary plat), when accurately surveyed, was determined to be 90.52 feet. If the 245 foot line (preliminary plat) is extended to the southwest side of Marcie Drive its indicated (by scale) length is 285 feet. It will be observed that the same distance on the plat of Section 2 is (231.13 + 50.84) 281.97 feet.

There can be little doubt that Schloss Corp. originally intended to make the triangle, not a part of Lot 5, but a part of the Flood Control Reservation. As earlier alluded to, although the deed to the county purports to convey the *two* parcels shown on the plat of Section 4, there is only *one* parcel so designated on that plat. It must now be observed that the southeastern boundary of the triangle (50.84 feet) is coincident with the dividing line between the plat of Section 2 and the plat of Section 4. As made clear by Mr. Sell, the triangle is not a part of Block "G" of Section 2 nor is it a part of Block "B" of Section 2. Neither is it "shown" on the plat of Section 4. What happened seems to us quite clear. The draftsman of the deed to the county assumed, mistakenly, that the triangle was, in fact, "shown" on the plat of Section 4. In the circumstances, then, it is easy to understand why the engineers who prepared the plat of Section 2 dealt with the triangle as they did. They were required (by the terms of the purchase money mortgage) to prepare the plat of Section 2 "in substantial conformity"

with the preliminary plat. Since the preliminary plat unmistakably shows the area which became the triangle to be a part of the Flood Control Reservation, it was necessary for the engineers to delineate and describe it in such a way that the attorneys could draft proper deeds conveying it to the county.

· We think it is clear that Silbert did not acquire title to the triangle and since no one contends that title passed to the county, it must be conceded that title became revested in Schloss Corp. by virtue of the foreclosure proceedings. Judge Raine so held and we agree.

## II.

Judge Raine also held, as has been pointed out, that the triangle "is a part of the Flood Control Reservation." His opinion, however, does not make clear just what he intended those words to mean. It occurs to us that he probably concluded a dedication of the triangle to flood control use had been accomplished by the acts and conduct of the landowner. We think there is ample support in the decisions of this Court for such a conclusion.

In *Stover v. Steffey*, 115 Md. 524, 530, 81 Atl. 33 (1911) Judge Pattison, for the Court, quoting from earlier opinions, stated the well-established rule in respect of dedication:

"'It has always been held in this State and elsewhere that whether a dedication to the public has been made depends in every case upon the intention of the parties, and this, whether dedication is claimed by acts *in pais,* by solemn conveyances of record, or by judicial proceedings. And it is also as well settled that such intention to dedicate must be established by clear, satisfactory and unequivocal testimony.' *Harbor Co. v. Smith,* 85 Md. 541.

"'The principle of dedication rests largely upon the doctrine of estoppel *in pais,* and, while there are general rules applicable to certain lines of conduct on the part of the owner of the land, each individual case must after all be decided upon its own facts and circumstances.' *Baltimore v. Frick,* 82 Md. 83; *Canton Co. v. Baltimore,* 106 Md. 83."

In *Smith v. Shiebeck*, 180 Md. 412, 419, 24 A. 2d 795 (1942), Judge Delaplaine, for the Court, paraphrased the rule quoted by Judge Pattison:

"* * * In Maryland no particular form or ceremony is necessary to dedicate land to public use. No deed is necessary to evidence a dedication, nor any grantee in *esse* to take the title. *Harlan v. Town of Bel Air,* 178 Md. 260, 13 A. 2d 370. As dedication is purely a question of intention, any act of a landowner clearly manifesting such an intention is sufficient. *Lonaconing, M. & F. Ry. Co. v. Consolidation Coal Co.,* 95 Md. 630, 634, 53 A. 420."

That Schloss Corp., Sherwood and Marcie intended to dedicate the triangle to flood control use seems to us, in the circumstances, to be an inevitable conclusion. Except to observe that for some time there has been a large underground pipe running from the catch basin on Marcie Drive across the triangle to the Flood Control Reservation area, we think the matter requires no further discussion. Silbert contends, however, that Judge Raine's decree restricting the use of the triangle to flood control purposes exclusively, must be affirmed. We do not agree.

In *King v. Land & Improvement Co.,* 143 Md. 693, 697-98, 123 Atl. 455 (1923), the Court, speaking through Judge Urner, said:

"For all purposes consistent with the dedicated use the rights incident to the grantor's pre-existing title may still be exercised. *Chesapeake & Pot. Tel. Co. v. Mackenzie,* 74 Md. 36. A common law dedicator 'has full dominion and control over the land, subject to the easement in the public, and may bring an action for trespass against any person who infringes on the ordinary rights of the owner of the soil, in a manner not in the use of the easement, and, subject to the same restrictions, may also maintain ejectment for the land.' 8 *R. C. L.* 909-10. It is said in 18 *C. J.* 114, that as, at common law, 'the dedicator retains the fee and the full right of enjoyment so far as this does not inter-

fere with the dedicated use, he still has his full rights in the soil, owning the minerals, the gravel, and his sewer pipes, and water pipes, though laid after dedication.' "

In a later case, involving the same property, Judge Parke, who wrote the Court's opinion, observed:

"* * * the rights of the defendants as the owners of the fee conferred upon them full dominion and control over the land, and they had all the rights of an absolute owner of the soil, subject only to the easement and servitude in favor of the public." *North Beach v. Land & Imp. Co.,* 172 Md. 101, 121, 191 Atl. 71 (1937).

There is no need for us to attempt to catalogue the uses Schloss Corp. might make of the triangle which would be compatible with its use as a flood control facility. There can be no doubt, however, that the building of a road or street across it, assuming the present grade is maintained (or lowered) and assuming also the absence of any interference with the flow of surface water from the catch basin on Marcie Drive, would be a use which could scarcely be called incompatible.

### III.

Silbert contends that Schloss Corp. is estopped from building a road over the triangle because of certain representations (or misrepresentations) made to Silbert (and Lewis and Berenholtz) before he bought his property. Equitable estoppel has been discussed by this Court many times. In the recent case of *Savonis v. Burke,* 241 Md. 316, 216 A. 2d 521 (1966), many of the cases are cited. A synthesis of the prior statements is provided by Judge Barnes, who wrote the Court's opinion:

"Equitable estoppel operates as a technical rule of law to prevent a party from asserting his rights where it would be inequitable and unconscionable to assert those rights. [Citing cases.] It is essential for the application of the doctrine of equitable estoppel that the party claiming the benefit of the estoppel must have

been misled to his injury and changed his position for the worse, having believed and relied on the representations of the party sought to be estopped. [Citing cases.] Furthermore, one claiming the benefit of an equitable estoppel must have acted in 'good faith and with reasonable diligence.' [Citing cases.]" *Id.* at 319-20.

Our inspection of the record leads us to believe that no misrepresentations (and few, if any, representations) were made to Silbert. He said he saw the preliminary subdivision plat in the office but that he "wasn't interested in Plat 2" and, at no time, did he ask to see it. He bought the property because of "the amount of ground and the tranquility of the neighborhood and particularly the scenery surrounding * * * [his] house. In the back * * * there's a nice hill with a lot of trees and on the side * * * there was a lot of trees also." He had his title examined. Union Trust Company financed the purchase for him. He said he couldn't remember whether his attorney (or the bank's attorney) ever called his attention to Plat 2. He "took it for granted * * * [his attorney] was taking care of everything * * *." Although the preliminary plat clearly shows the proposed development of the land in the rear (the 23 acres) he thought it "was always going to be open." *After the settlement,* he was given a small plat the main purpose of which was to show the location of the improvements on the lot. The triangle is shown in much the same manner as on Plat 2. Silbert argues this plat supports his contention because the course and distance of the 90.52 foot line is not shown. Printed thereon, however, is the certificate of Lester Matz (Matz, Childs & Associates, Engineers) to the effect that he had located the improvements, that they exist and that they lie entirely within the boundaries. Printed also, in large block letters, are the words, "This plat not intended for use in the establishment of property lines." Silbert claims he had a conversation with Pete Robbins, an employee of Marcie, *after the settlement,* during which Robbins is said to have pointed out, in a general way, the location of the boundaries. At the time the corners had not been staked. The testimony of Silbert and Robbins, even when added together, is so vague and inconclusive that, all things

considered, it proves little more than that they had a conversation.

In *Piper v. Jenkins,* 207 Md. 308, 313-14, 113 A. 2d 919 (1955) Judge Delaplaine, for the Court, said:

"We concede, of course, that if the vendor does not pretend to point out any boundary line specifically but merely expresses an opinion, or estimates the distance from a known point to an unknown point, the purchaser cannot rely upon such a representation as a fact but must ascertain the boundary lines for himself. *Arnold v. Campbell,* 265 Ky. 485, 97 S. W. 2d 32; *Gunther v. Ullrich,* 82 Wis. 222, 52 N. W. 88; *Davis v. Central Land Co.,* 162 Iowa 269, 143 N. W. 1073, 49 L. R. A., N. S., 1219; *Odell v. Story,* 81 Neb. 437, 116 N. W. 269. Likewise, where the means of knowledge are at hand, and the purchaser undertakes to make an examination of the land records, he cannot say that he was deceived and injured by misrepresentations of the vendor. *Shappirio v. Goldberg,* 192 U. S. 232, 24 S. Ct. 259, 261, 48 L. Ed. 419."

Silbert suggests that besides being "an invasion of his privacy" he will be damaged by the additional traffic which will be generated by the proposed road. If Silbert's lot was situated on one of the cul-de-sacs (similar to Split Rock Court) there might be some merit in his contention. But his lot fronts on Marcie Drive, the "Main Street" of the subdivision. An inspection of the preliminary subdivision plat (which is the one thing he said he saw) demonstrates that much of the traffic entering and leaving the subdivision will pass by his door. Since the R.40 zoning must be maintained, it is unlikely the 23 acre tract will produce more than 10 or 12 salable lots. It seems fair to say that they will not generate much additional traffic. Moreover, further inspection of the preliminary plat reveals that some of the streets are designed to connect up with streets in neighboring subdivisions so that a substantial amount of whatever additional traffic this situation is bound to create must also pass by his door. Other than Silbert's allegation in the bill of complaint that the proposed road "would seriously impair

the value" of his property, the record is bare of any evidence on that score.

Lewis' only conversation was with Robbins who told him about the view "down the gully" (the Flood Control Reservation) and that it was owned by the county. That no misrepresentation was made to him is fully established by his own testimony. He said, "* * * *if I would have been told* there would have been a street there, I never would have bought the house."

Although we have examined carefully the lengthy testimony of Berenholtz (Sol C. Berenholtz, a well-known Baltimore attorney) we have been unable to discover a single instance of his being *told* anything by anyone. He said that in the course of his many visits to the sales office he saw the preliminary plat on the wall. If others were there he paid no attention to them. He was familiar with the Silbert lot because at one time he considered buying it. He recalled that the area (within the triangle) was sodded and he *assumed* it belonged in part to him and in part to Silbert.

We arrive, without difficulty, at the conclusion that Silbert and his two neighbors, all of them acting independently, conducted their own investigations, made their own assumptions, and reached their own conclusions. They employed others to examine the land records but there is no evidence that any information gained thereby was ever imparted to them or that, if imparted, they gave it any consideration. Whether, before settlement, they entertained any doubts or were disturbed by any uncertainties we do not know, since there is nothing in the evidence to indicate they ever asked any questions. They do not claim there was information which was not available to them, or that it was concealed from them, or that it was denied to them.

They seem to argue that merely because the developer *exhibited* the preliminary plan he is forever after estopped from making any changes in it. This Court has never adopted any such proposition, nor, to our knowledge, has any other court. Indeed, the decisions which have been brought to our attention are to the contrary. See *Brady v. Farley*, 193 Md. 255, 66 A. 2d 474 (1949) ; *Bave v. Guenveur*, 36 Del. Ch. 48, 125

A. 2d 256 (1956) ; *Janicki v. Lorek,* 255 N. C. 53, 120 S. E. 2d 413 (1961). Of course, it might have been a horse of a different color if it could have been shown that the developer had represented to Silbert (or Lewis or Berenholtz) that there would be no changes or modifications in the preliminary plan or that specific features shown therein would remain unchanged.

### IV.

The contention of Schloss Corp. that the foreclosure sale purged its title of any claims or rights Silbert and the others might have against the developer requires some comment. It is argued that *Sullens v. Finney,* 123 Md. 653, 91 Atl. 700 (1914) requires such a holding. We do not agree.

In that case, Finney owned 125 acres which he sold to a developer. Part of the purchase price was secured by a purchase money mortgage. *After the sale,* the developer recorded plats and subjected the property to certain restrictive covenants. Six years later Finney became the purchaser of the remaining property at his own foreclosure sale. He resold the property but his purchaser refused to settle, claiming that the restrictions were a defect in the title. The lower court specifically enforced the contract of sale. In affirming the lower court, our predecessors, speaking through Judge Urner, said:

> "The appellant's objection to the title offered him by the appellee, as to the lots covered by the agreement of purchase involved in this suit, arises from the anticipation that the owners of lots which have been sold subject to restrictions may insist upon the observance of similar conditions in the use of the remaining lots embraced in the same development. This apprehension is said to be justified by the rule that where there is a general plan for the improvement of property, a restrictive covenant imposed by the grantor upon the individual purchasers of the land, in pursuance of such a plan, is enforceable at their instance as against the remainder. *Summers v. Beeler,* 90 Md. 474; *Safe Deposit Co. v. Flaherty,* 91 Md. 489; *Peabody Heights Co. v. Willson,* 82 Md. 186; *Halle v. Newbold,* 69 Md. 265; *Thruston v. Minke,* 32 Md. 487; *Foreman*

*v. Sadler,* 114 Md. 574; *Wood v. Stehrer,* 119 Md. 143. It is not denied that ordinarily this rule would be unavailing to affect a title which, like the present, has been acquired from the common grantor before the plan of improvement was inaugurated, or any of the rights for whose protection it is invoked were created. It is, of course, perfectly clear that after the execution and delivery of the mortgage it was beyond the power of the mortgagor, by his own act, to impair or modify the estate conveyed, and that the sale under the mortgage invested the purchaser with the entire title held by the mortgagor at the time the instrument was recorded. *Duval v. Becker,* 81 Md. 537-548; *Felgner v. Slingluff,* 109 Md. 480; *Code,* Art. 66, sec. 11. But it is urged that under the special circumstances of this case, the mortgagee, who has since become the owner in fee, is estopped to deny that the remaining lots are subject to the same restrictions as those mentioned in the deeds for the lots owned by other purchasers. In support of this theory our attention is called to evidence showing that at the time the mortgage to the appellee was executed he became the general manager of the mortgagor company under an agreement in writing which provided that in consideration of his loan of $25,000.00 to the company being made without interest, he should be entitled to receive one-half of all the net profits which the company might make thereafter in the sale of the mortgaged lands, and that until the whole should be disposed of and the profits therefrom divided, the company would employ the appellee as its general manager without salary and would do no act in reference to the development and sale of the lots without his approval." *Id.* at 656-57.

In the case at bar, the circumstances and conditions are quite different. The contract of sale and the purchase money mortgage require the purchaser to develop the property "in substantial conformity" with the plan conceived and developed by Schloss Corp. which also required the subdivision plats (show-

ing the triangle and the Flood Control Reservation) to be submitted to it for approval. Since Schloss approved these plats, further comment seems unnecessary.

## V.

For the reasons stated, the decree of the trial court will be affirmed in part and reversed in part and the case will be remanded for the passage of a decree consistent with the views expressed in this opinion. The costs will be paid by Silbert.

*Decree affirmed in part and reversed in part.*

*Case remanded for passage of a decree consistent with the views expressed in this opinion.*

*The costs to be paid by Silbert.*

# STEVENSON RIDGE
## SECTION 2
### BALTIMORE CO. MD
### ELECTION DIST. 3
### JAN. 23, 1958
### SCALE 1"=100'

# SECTION 4
# STEVENSON RIDGE
ELECTION DIST #3          BALTIMORE CO., MD.

SCALE: 1"=100'          NOV. 25, 1958