## DEPARTMENT OF NATURAL RESOURCES v. CROPPER ET AL.

[No. 172, September Term, 1974.]

*Decided February 21, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Warren K. Rich, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Henry R. Lord, Deputy Attorney General*, on the brief, for appellant.

*Raymond S. Smethurst, Jr.*, with whom were *Robert B. Taylor* and *Adkins, Potts & Smethurst* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court. ELDRIDGE, J., dissents and filed a dissenting opinion at page 29 *infra.*

Although the facts of this case differ, but not to a significant degree, from those in *Department of Natural Resources v. Mayor & City Council,* 274 Md. 1, 332 A. 2d 630 (1975) the legal issues are the same.

George Bert Cropper, one of the respondents, is the owner of lot 5 in block 15 on the plat of Fenwick, Maryland, in Ocean City (the City). As originally platted, lot 5 was an ocean front lot, extending in an easterly direction 200 feet from Wight Street with a width of 50 feet. As a consequence of the erosion of the foreshore, the mean high water mark may now be within the eastern lot line, thereby somewhat reducing the depth of the lot.

When the respondent George Bert Cropper, Inc. commenced the construction of a house for Mr. Cropper, Department of Natural Resources (the State) instituted an action for injunctive relief against both respondents in the Circuit Court for Worcester County. From an order dismissing the bill of complaint the State appealed to the Court of Special Appeals. We granted certiorari.

Ocean City's building limit line is 70 feet from the rear lot line of lot 5, and approximately 130 feet from the mean high water mark. The Cropper house, approximately 40 feet wide and 60 feet long, is within the City's building limit line, but east of the top of the dune constructed in the bed of Wight Street after the March, 1962 storm.

Here again, the relief sought is to prevent Mr. Cropper from exercising a legal right incident to his ownership: the erection of a house for which he holds permits from the appropriate City and County authorities. The State relies upon the same arguments advanced in *Department of Natural Resources v. Mayor & City Council, supra:*

(i) The area between the dune line and the mean high water mark has been dedicated to the public;

(ii) The public has attained the right to use the area between the dune line and the mean high water mark through prescriptive use;

(iii) The public's interest in Maryland's coastal beaches established through custom and grant requires that activities violative of the public trust be prohibited; and,

(iv) Land inundated by mean high water reverts to State ownership; areas reclaimed by governmental efforts remain State property.

All four contentions were considered in *Department of Natural Resources v. Mayor & City Council* and that case is dispositive of (iii) and (iv). Because of a differing factual background, (i) and (ii) will be briefly considered here.

(i)

When the area here involved, running north from what is now 118th Street in Ocean City to a point beyond the Delaware state line was originally platted in 1902 and 1903, between the front lot line of the ocean front lots and the ocean lay a "paper" street designated "Maryland and Delaware Boulevard" and east of that there was indicated what was apparently a beach. Whether the boulevard and beach were ever formally dedicated or whether an easement could be derived from an implied dedication are today questions of academic interest, because by the time the area was resurveyed by Mr. Cropper in 1940, both the boulevard and beach were below mean low water and the mean high water mark was somewhat west of the

front lines of the waterfront lots. Mr. Cropper was of the opinion that this was probably either the consequence of an error made in the original survey or the result of erosion.

The chancellor below, Pollitt, J., found that there had been no dedication of any of the property lying within Mr. Cropper's lot lines, because there was no evidence of an intention to dedicate, relying on *Toney Schloss v. Berenholtz,* 243 Md. 195, 220 A. 2d 910 (1966) and cases there cited.

(ii)

As regards the argument that the public had acquired by prescription a right to use the property between the dune line and mean high water, the chancellor found that prior to 1962, the dune line was 40 feet east of its present location. There was a further finding that there was no competent evidence of a continuous and uninterrupted adverse use by the general public for a period of 20 years, but rather that such use as there was consisted of a miscellaneous and promiscuous use of land in a general state of nature, citing *Feldstein v. Segall,* 198 Md. 285, 295, 81 A. 2d 610, 615 (1951); *Wilson v. Waters,* 192 Md. 221, 228, 64 A. 2d 135, 138 (1949), and *Thomas v. Ford,* 63 Md. 346, 354 (1885).

We find no reason to disturb the result reached below. As we pointed out early on, the State mounted an attack which was designed to preclude Mr. Cropper from making an otherwise legal use of his property by constructing a house. As we indicated in *Department of Natural Resources v. Mayor & City Council, supra,* if the question had been confined to the narrow issue of the public's right to use such part of the dry sand beach not used by Mr. Cropper in a manner not unreasonably interfering with his possessory rights, *United States v. Harrison County, Mississippi,* 399 F. 2d 485, 491 (5th Cir. 1968), other and different considerations might well have come into play. This, however, was not the case.

*Order affirmed, costs to be paid
by petitioner.*

*Eldridge, J., dissenting:*

For essentially the same reasons set forth in my dissenting opinion in *Department of Natural Resources v. Mayor and Council of Ocean City,* 274 Md. 1, 332 A. 2d 630 (1975), I would reverse and remand for further proceedings.