*John Allen Wilkinson v. Board of County Commissioners of St. Mary's County, Maryland and Christopher and Barbara Aiken*, No. 0478, Sept. Term 2020.  Opinion by Zic, J.

**REAL PROPERTY – DEED – CONSTRUCTION AND OPERATION**

When construing a deed's language, "the basic principles of contract interpretation apply."  *Gunby v. Olde Severna Park Improvement Ass'n, Inc.*, 174 Md. App. 189, 242, *aff'd*, 402 Md. 317 (2007).  If the deed's language "is plain and unambiguous, there is no room for construction" and "there [is] no need to construe it through the use of extrinsic evidence."  *Gilchrist v. Chester*, 307 Md. 422, 424-25 (1986) (quoting *Bd. of Trs. of State Colls. v. Sherman*, 280 Md. 373, 380 (1977)).

A landowner conveyed the disputed property to the State via a deed in 1945.  The deed's terms are unambiguous in that it did not create an easement over the disputed property, but rather, conveyed the disputed property "forever in fee simple."  Because the deed is unambiguous and conveyed the disputed property in fee simple, there is no need to consider extrinsic evidence.  Moreover, the deed did not convey the disputed property in fee simple determinable, but rather, fee simple absolute.  While the deed specified that the purpose of conveying the disputed property was to create a highway, such a statement of purpose does not debase the fee.

**REAL PROPERTY – CREATION OF A PUBLIC ROAD – DEDICATION**

A public road may be established by one of three legal methods:  (1) public authority; (2) dedication; or (3) long, uninterrupted use by the public as a road, for twenty years or more, "which, though not strictly prescription, yet bears so close an analogy to it that it is not inappropriate to apply to the right thus acquired the term prescriptive."  *Thomas v. Ford*, 63 Md. 346, 351-52 (1885).  Pursuant to the second method, "[a] completed common law dedication 'requires an offer and acceptance.'"  *Gregg Neck Yacht Club, Inc. v. County Comm'rs of Kent County*, 137 Md. App. 732, 755 (2001) (quoting *Wash. Land Co. v. Potomac Ridge Dev. Corp.*, 137 Md. App. 33, 40 (2001)).

The circuit court erred in concluding that no public road was created south of Station Marker 14.  Instead, there was a complete dedication.  First, there was an offer to dedicate the disputed property to public use where landowner conveyed disputed property "for a public highway," and a recorded plat laid out the road.  Second, acceptance occurred when the State assumed control of the disputed property via acceptance of a deed or other record.

Circuit Court for St. Mary's County
Case No. C-18-CV-18-000489

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0478

September Term, 2020

JOHN ALLEN WILKINSON, Trustee,
Wilkinson Family Trust

v.

BOARD OF COUNTY COMMISSIONERS
OF ST. MARY'S COUNTY, MARYLAND
and
CHRISTOPHER AND BARBARA AIKEN,
Trustees, Aiken Family Trust

Leahy,
Zic,
Ripken,

JJ.

Opinion by Zic, J.

Filed: July 28, 2022


Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

\* Kehoe, Christopher B., J., did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1.

This case concerns a dispute over ownership and access rights regarding a piece of real property located in St. Mary's County. The property is an irregularly shaped strip of unimproved land of approximately 0.196 acres bordering the shore of the Chesapeake Bay ("disputed property"), which is located in a subdivision known as Scotland Beach. John Allen Wilkinson, trustee for the Wilkinson Family Living Trust ("Wilkinson"), owns property that lies on either side of the disputed property. The disputed property bisects Wilkinson's property into (1) one large portion to the west of the disputed property, consisting of approximately one and one-half lots, including a house, and (2) a small triangle-shaped piece of shoreland to the east of the disputed property. Wilkinson filed suit against the Board of County Commissioners of St. Mary's County ("County"), asserting ownership of the disputed property. Christopher and Barbara Aiken, trustees of the Aiken Family Trust ("Aikens"), own undeveloped property to the south of Wilkinson's property and the disputed property. The Aikens successfully intervened as defendants, asserting that they have access rights over the disputed property.

On cross motions for summary judgment, the Circuit Court for St. Mary's County found that the County owned the disputed property in fee simple and denied Wilkinson's motion for summary judgment. The court further granted the County's motion for summary judgment as to all claims asserted by Wilkinson and the Aikens. As to the claims between the Aikens and Wilkinson, the court denied the Aikens' motion for summary judgment and entered judgment in favor of Wilkinson. Wilkinson then appealed and the Aikens cross appealed.

# QUESTIONS PRESENTED

Wilkinson presents three questions, which we have slightly rephrased as follows:

1. Did the court err in holding that the Brady deed is unambiguous and erroneously fail to consider evidence extrinsic to the deed?

2. If the court erred in holding that the Brady deed conveyed a fee simple interest instead of an easement, whether the court erroneously disregarded Wilkinson's claims of abandonment and estoppel of the easement thereby created?

3. If the court correctly held that the Brady deed conveyed a fee simple interest, whether the court erred in holding that the interest conveyed was a fee simple absolute?

As to the first question, we determine that the court did not err in holding that the deed is unambiguous. For the second question, because we hold that the court did not err in holding that the Brady deed conveyed a fee simple interest, we do not reach Wilkinson's contentions regarding abandonment and estoppel. As to the third question, we hold that the court did not err in determining that the County owns the disputed property in fee simple absolute.

In their cross appeal, the Aikens raise the following questions:

1. Whether the circuit court erred in determining that there was no public road south of Station Marker 14?

2. Whether the circuit court erred by dismissing the Aikens' claim to quiet title?

3. Whether the circuit court erred by dismissing the Aikens' tort claim for interference with easement for failure to provide notice to the County?

Regarding the Aikens' first question, we hold that the court erred in concluding that there was no public road south of Station Marker 14. For the second question, we hold that the

2

court did not err by dismissing the Aikens' claim to quiet title. For the third question, we hold that the court did not err by dismissing the Aikens' claim for interference with easement. We therefore affirm in part and vacate and remand in part.

## BACKGROUND

The Scotland Beach subdivision is located on a peninsula that juts into the Chesapeake Bay. The Chesapeake Bay lies along the eastern shore of the peninsula, while Tanner Creek is along the west side. The Scotland Beach subdivision plat, recorded at Liber EBA 19, folio 408 on January 29, 1920 in the land records for St. Mary's County, is excerpted below[1]:



The State Roads Commission of Maryland proposed a series of road projects to construct a State highway, designated "Scotland Beach to Point Lookout," to run through the peninsula. The proposed highway was intended to follow the northern boundary of

---

[1] A full reproduction of the Scotland Beach subdivision plat is included in Appendix A to this opinion.

the Scotland Beach subdivision and turn south, continuing along the shoreline of the Chesapeake Bay toward Point Lookout. The portion of the highway along the Chesapeake Bay was referred to as "Scotland Beach Road." As an adjunct to the Scotland Beach to Point Lookout highway, the State sought to extend an internal road, formerly known as Ed's Road, through the middle of the Scotland Beach subdivision. The internal road was to be designated as "Bay Front Drive" and would run from the northern end of the subdivision to the southern end, with its southern terminus connecting to Scotland Beach Road along the Chesapeake Bay shoreline.

In the 1940s, the State Roads Commission acquired property for Bay Front Drive through condemnation proceedings and conveyances from landowners. In 1945, Joan Brady, a predecessor-in-interest to Wilkinson, deeded portions of her land to the State Roads Commission ("Brady deed") to be used for the Scotland Beach to Point Lookout highway and extension of Bay Front Drive. Ms. Brady owned Lots 17, 18, and 19, and the planned southern portion of Bay Front Drive would cut through a portion of Lots 18, 19, and 20. The Brady deed, recorded at CBG 15, folio 137, transferred the disputed property to the State and reads in part:

> WHEREAS, the State Roads Commission of Maryland, acting for and on the behalf of the State of Maryland, finds it necessary to acquire land, easements, and or rights, etc., shown and or indicated on State Roads Commission of Maryland's Plat No. 1919 which is duly recorded, or intended to be recorded, among the Land Records of St. Mary's County in the State of Maryland in order to lay out, open, establish, construct, extend, widen, straighten, grade and improve, etc., under its Contract SM-154-1-811 and or improve in any manner a highway and/or bridge, together with the appurtenances thereto belonging

4

known as the Scotland Beach to Point Lookout, as a part of the Maryland State Roads System, and, thereafter use, maintain and/or further improve said highway and/or bridge, and

WHEREAS, the laying out of said highway and/or bridge and their appurtenances, in addition to being required for public convenience, necessity and safety, is a material benefit to the undersigned,

NOW, THEREFORE, THIS DEED AND RELEASE WITNESSETH: That for and in consideration of the above premises, One Dollar ($1.00) and other good and valuable considerations, the receipt whereof is hereby acknowledged, we do hereby grant and convey unto the State of Maryland, to the use of the State Roads Commission of Maryland, its successors and assigns, *forever in fee simple*, all our right, title, and interest, free and clear of liens and encumbrances, in and to all the land, together with the appurtenances thereto belonging, or in any wise appertaining, *lying between the lines designated "right of way line" as shown and/or indicated on the aforesaid plat*, all of which plat is made a part hereof, so far as our property and/or our rights may be affected by the said proposed highway and/or bridge and the appurtenances thereto belonging, or in any wise appertaining . . . .

(emphasis added). The Brady deed states that the property is conveyed "forever in fee simple . . . free and clear of liens and encumbrances." It specified that the deeded property lies between the "'right of way line[s]' as shown and/or indicated on [Plat 1919]," which effectively transferred a portion of Lot 18 and portion of Lot 19.

Bay Front Drive is depicted on Plats 1918 and 1919, both of which were recorded on June 19, 1952 and again on March 26, 1986. Plat 1918 shows the northern portion

5

(beginning at the northern intersection of Scotland Beach Road to Station Marker 10).

An excerpt of Plat 1918[2] is reproduced below:



Plat 1919 shows the remaining southern portion of Bay Front Drive (continuing from Station Marker 10 to the fantail-shaped portion at the end of the road, which would connect to the southern intersection of Scotland Beach Road), an excerpt of which is shown below[3]:

---

[2] Plat 1918 is reproduced in full in Appendix B to this opinion.

[3] Plat 1919 is reproduced in full in Appendix C to this opinion.



Bay Front Drive was paved on the northern portion, ending around Station Marker 14. The southernmost portion of Bay Front Drive (from around Station Marker 14 to the fantail), however, was never paved due to erosion by storms and hurricanes, particularly Hurricane Hazel in 1954. The portion of land between Station Marker 14 and the disputed property is graveled. The storms eroded the land on the Chesapeake Bay side of the Scotland Beach peninsula, submerging much of the land where Scotland Beach Road was planned along the Chesapeake Bay shore and a portion of the southern fantail of Bay Front Drive. Due to the erosion, the planned extension of Scotland Beach Road was not completed.

In 1974, a predecessor-in-interest to Wilkinson granted St. Mary's County an easement to build and maintain a revetment along the shoreline to protect it from further erosion. The easement, which was recorded, is over a small corner of Lot 19 that was not conveyed by the Brady deed.

In 1988, the State Highway Administration, on behalf of the State, granted and conveyed "all right, title[,] and interest" in the land "lying between the lines designated 'right of way'" as shown on Plats 6016, 1918, and 1919 to St. Mary's County ("1988 deed"). The 1988 deed was recorded at Liber 451, folio 415 on December 22, 1988 and states in part:

> WHEREAS, the State Highway Administration has agreed, for good and valuable considerations, to convey unto the "GRANTEE(S)" herein, certain land, hereinafter described, which the "Grantor" has determined is no longer needed by it in connection with the construction, operation, maintenance, use and protection of the State Highway System . . . .
>
> . . . .
>
> THE GRANTORS DO HEREBY GRANT AND CONVEY unto St. Mary's County *all right, title and interest* of the Grantors in and to all the land, together with the appurtenances thereto belonging, or in anywise appertaining, *lying between the lines designated "right of way line"* as shown and/or indicated on the State Roads Commission of Maryland's plats numbered 6016 (revised 4-25-45), 1918 and 1919, recorded or intended to be recorded among the Land Records of St. Mary's County, Maryland.
>
> CONTAINING: 1.38 acres plus or minus.
>
> BEING ALL OF THE BED of the road known as Bay Front Drive . . . .

> BEING PART OF THE BED of the road known as Scotland Beach Road . . . .
>
> . . . .
>
> BEING ALL OF THE LAND which by deed recorded August 14, 1945 among the Land Records of St. Mary's County in liber C.B.G. no. 15 folio 137 was conveyed by Joan K. Brady to the State of Maryland to the use of the State Roads Commission of Maryland.[4]

(emphasis added).

At some point, the County placed a sign near Station Marker 14 on Bay Front Drive stating, "End of County Maintenance," which is where the paved portion ends.[5] Currently, there is a pedestrian footpath across the disputed property that leads to the revetment and beach. The County uses both the disputed property and the easement over Lot 19 to access the shore and revetment for maintenance.

In July 1995, John and Susan Wilkinson purchased Lots 17, 18, and 19 in the Scotland Beach subdivision and later transferred it to the Wilkinson Living Trust in May 2016. The Aikens purchased undeveloped land south of the Wilkinson property in 2004 and transferred the land to the Aiken Family Trust in 2006.

---

[4] In addition to the disputed property originally conveyed by Ms. Brady to the State, the property conveyed in the 1988 deed included land that the State had obtained through condemnation proceedings and other conveyances from neighboring landowners.

[5] It is not clear from the record when exactly the sign was placed, but the parties agree the sign is located at or near Station Marker 14.

The current boundaries of the disputed property are shown on the recorded Chesapeake Trails Surveying, LLC's boundary survey (Liber 4391, folio 390)[6] and by an exhibit plat prepared by DH Steffens Company that was introduced in the proceedings below by the County. The DH Steffens Company exhibit plat depicts the disputed property bisecting the Wilkinson property:



---

[6] A full reproduction of the Chesapeake Trails Surveying, LLC's boundary survey is included in Appendix D to this opinion.

In the reproduction of the exhibit plat, the dashed lines depict the land deeded from Ms. Brady to the State. The disputed property, covering a portion of Lots 18 and 19, is represented by the dashed lines highlighted in yellow. The disputed property, which is unimproved, is 80 feet long at its greatest length and 40 feet wide at its greatest width. At its narrowest point, between Wilkinson's property on the western side and the stone revetment on the eastern side, it is approximately 10 feet wide. Lot 17 and the remaining portion of Lot 18 are to the left of the disputed property, and the revetment is depicted along the shore. The Aikens' property (alleged to be Lots 23, 24, and 25) is located to the south of the disputed property. Lot 19 is partially under water, while Lots 20 and 21 are fully submerged. The County's "End of County Maintenance" sign at Station Marker 14 is highlighted in red at the top of the reproduction. The court found that the disputed property is "not physically suitable for a road."

In December 2007, Wilkinson petitioned the County, pursuant to Chapter 109 of the Code of St. Mary's County, "to close, or not to open" the disputed property as a road. Wilkinson requested that the County "close up (not open) the portion of Bay Front Drive traversing said Lots 18 and 19 . . . as a public road." The petition alleged that "the portion of Bay Front Drive traversing Lots 18 and 19 [i.e., the disputed property] is not the *only* way for the [Aikens] to access Bay Front Drive as there are multiple back alleys already in existence." Wilkinson argued that the disputed property "cannot be constructed, maintained, or designed" due to its location in the Chesapeake Bay Critical Area and it "therefore, should not be opened to the public."

11

A public hearing was held on November 15, 2016 "for the closing of part of Bay Front Drive." On August 1, 2017, the County adopted Ordinance No. 2017-23 "To Close Bay Front Drive (Extended)" ("Ordinance"), with an effective date of August 15, 2017. The Ordinance specifies that the County is "authorized to open, alter or close certain public roads." The County "initiated a proposal that a portion of the right of way designated as Bay Front Drive, a public road, . . . be closed" and subsequently "determined that the public interest will best be served by closing said portion of Bay Front Drive." The County ordered "[t]hat portion of the road designated as Bay Front Drive"—as shown by the entire yellow highlighted area depicted on the DH Steffens Company exhibit plat above—"be closed."

### *The Parties' Claims*

Wilkinson filed suit against the County in the Circuit Court for St. Mary's County, asserting ownership of the disputed property based upon theories of adverse possession, abandonment, and estoppel. The complaint initially contained three claims: declaratory judgment, quiet title, and slander of title. Wilkinson later amended his complaint, retaining only his claim for declaratory judgment. The County filed a counter complaint against Wilkinson, asserting a claim for declaratory judgment that it owns the disputed property in fee simple.

The Aikens intervened as defendants and filed a combined cross and counter complaint, asserting various causes of action against both Wilkinson and the County. As against both Wilkinson and the County, the Aikens asserted claims for declaratory judgment (Count I), injunctive relief (Count III), and interference with easement (Count

12

V). The Aikens asserted a claim to quiet title (Count II) against Wilkinson.[7] The Aikens additionally asserted an inverse condemnation claim (Count IV) against only the County.

Specifically, Count I sought a declaratory judgment that the Aikens have a right to use Bay Front Drive to access their own property, to "requir[e] the County . . . to keep the entire remaining width of Bay Front Drive open for ingress and egress," and to prohibit Wilkinson from interfering with the Aikens' right to use the disputed property. Count II sought to quiet title to the Aikens' property (alleged to be Lots 23, 24, and 25) and for the court to "declar[e] that the Aikens are the absolute owners in fee simple of all of the Aiken property, subject only to the [County's] easements." Count II also admitted that the County "maintain[s] an easement over the Aiken property in order to maintain the erosion control systems on the property." Count III sought injunctive relief, requiring the County to keep the alleged public road over the disputed property "open for ingress and egress" and prohibiting Wilkinson from blocking the alleged public road. Count IV alleged that, if the County "caused the public's and the Aiken's easement over Bay Front Drive to be lost," this constitutes a taking and that the Aikens should be compensated for the loss of value to their property. Count V asserted interference with easement, which sued the County in tort for allegedly failing to consistently remove barriers repeatedly erected by Wilkinson on the alleged public road and sued Wilkinson for compensatory and punitive damages for interference with the Aikens' alleged easement.

---

[7] In its memorandum opinion, the court explained that "Count II is asserted only against the Wilkinsons" because "[i]t does not seek relief from nor set forth any allegations against the County."

13

The County filed a motion to dismiss the Aikens' cross claims against the County (Counts I, III, IV, and V), but the court neither held a hearing nor issued a ruling on the motion.

### *Motions for Summary Judgment*

The parties then filed cross motions for summary judgment. Wilkinson moved for summary judgment on his declaratory judgment claim. In the County's motion for summary judgment, the County argued that it was entitled to summary judgment on its declaratory judgment claim against Wilkinson and on Wilkinson's declaratory judgment claim. The County also argued that it was entitled to summary judgment on all counts of the Aikens' cross complaint (Counts I, III, IV, and V). Furthermore, the County reasserted its arguments that it made in its motion to dismiss. The Aikens moved for summary judgment only with respect to Count II of their counter complaint, seeking to quiet title against Wilkinson. The County filed an opposition motion.

Following a hearing, the court issued an order and accompanying memorandum opinion on June 19, 2020. The court determined that there were "no material facts in dispute" and that it "may decide all issues presented as a matter of law." The court "f[ound] and declare[d]" the following: (1) the "County is the owner in fee simple of the disputed property, free and clear of any and all claims, easements, liens[,] and encumbrances"; (2) neither Wilkinson nor the Aikens have "any private property interest in or with respect to the 'disputed property'"; and (3) the current boundaries of the disputed property owned by the County "are as shown on the recorded Chesapeake Trails [Surveying, LLC's] [b]oundary [s]urvey (Liber 4391, Folio 390)" and as shown on the

14

exhibit plat prepared by DH Steffens Company. The court also stated that "[t]here was no dedication of the disputed property as a public road, nor was there an acceptance of that dedication by competent authority." It further noted that "[t]here has only been public pedestrian use of the disputed land to traverse the disputed property to get to the beach and the use of the property by the County to access the revetment for maintenance" and such "public use does not transmorph [sic] the area into an alleged public road . . . ."

The court denied Wilkinson's motion for summary judgment and granted the County's motion for summary judgment with respect to Wilkinson's claim for declaratory judgment. The court granted the County's motion for summary judgment with respect to all claims asserted by the Aikens against the County (Counts I, III, IV, and V). As between Wilkinson and the Aikens, the court denied the Aikens' motion for summary judgment on Count II (quiet title) and dismissed the claim without prejudice. With respect to the Aikens' claims against Wilkinson in Counts III and V, the court granted summary judgment in favor of Wilkinson.

Wilkinson noted this appeal, appealing the circuit court's June 19, 2020 order. The Aikens noted a cross appeal, appealing the same judgment.

## STANDARD OF REVIEW

Under Rule 2-501(f), summary judgment is proper when the circuit court determines that "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Whether a circuit court properly granted summary judgment is a question of law that is reviewed de novo. *Kennedy Krieger Inst., Inc. v. Partlow*, 460 Md. 607, 632-33 (2018). "[W]e independently review

15

the record to determine whether the parties properly generated a dispute of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law." *Id.* at 632 (quoting *Chateau Foghorn LP v. Hosford*, 455 Md. 462, 482 (2017)). "We review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party." *Rogers v. State*, 468 Md. 1, 13 (2020) (quoting *Kennedy Krieger Inst., Inc.*, 460 Md. at 632-33). Furthermore, "an appellate court ordinarily may uphold the grant of a summary judgment only on the grounds relied on by the trial court." *Ashton v. Brown*, 339 Md. 70, 80 (1995).

When the "denial of summary judgment turns on [the court's] interpretation of a statute—as opposed to a determination that facts are in dispute—that ruling rests on a question of law" and we review the issue de novo. *Bell v. Chance*, 460 Md. 28, 52 (2018); *see also Baltimore County v. Quinlan*, 466 Md. 1, 13-14 (2019) (explaining that appellate courts typically "review the denial of a motion for summary judgment for abuse of discretion" but "[t]here are occasions in which the appellate court reviews non-discretionary matters without deference to the trial court, even on denials of summary judgment"). Likewise, "[w]hen we consider a declaratory judgment in tandem with the grant of summary judgment, and no material facts are in dispute, we consider 'whether that declaration was correct as a matter of law.'" *Connors v. Gov't Emps. Ins. Co.*, 442 Md. 466, 474 (2015) (quoting *Springer v. Erie Ins. Exch.*, 439 Md. 142, 155-56 (2014)).

"[T]he interpretation and application of Maryland constitutional, statutory and case law" is reviewed de novo. *Schisler v. State*, 394 Md. 519, 535 (2006). Similarly,

16

"[t]he interpretation of mortgages, plats, deeds, easements and covenants has been held to be a question of law." *White v. Pines Cmty. Improvement Ass'n, Inc.*, 403 Md. 13, 31 (2008). In this case, there are no disputes of material fact and our review is limited to whether the court was legally correct.

## DISCUSSION

### I. THE COURT DID NOT ERR IN DETERMINING THAT THE COUNTY OWNS THE DISPUTED PROPERTY IN FEE SIMPLE.

Wilkinson argues that the circuit court "failed to recognize the self-terminating action" of the Brady deed and that it erred by finding that the Brady deed was unambiguous. Instead, Wilkinson contends that the deed is ambiguous and that the court should have considered extrinsic evidence. Wilkinson further maintains that the Brady deed granted an easement to construct and maintain Scotland Beach Road and Bay Front Drive, which was terminated by abandonment and estoppel. Alternatively, Wilkinson asserts that even if the court did not err in finding that the Brady deed conveyed the disputed property in fee simple, it was conveyed in fee simple determinable rather than fee simple absolute.

The County contends that the court correctly determined that the County owns the disputed property in fee simple absolute. It also asserts that because the County received the disputed property in fee simple, Wilkinson's abandonment and estoppel claims do not apply. Even if the County's interest was an easement, the County maintains that Wilkinson's abandonment and estoppel arguments fail. Lastly, the County argues that

17

Wilkinson's contention that the disputed property was conveyed in fee simple determinable was not preserved.

When construing a deed's language, "the basic principles of contract interpretation apply." *Gunby v. Olde Severna Park Improvement Ass'n, Inc.*, 174 Md. App. 189, 242, *aff'd*, 402 Md. 317 (2007). "The determination of ambiguity is a question of law" that is reviewed de novo. *Id.* at 243. "[T]he clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or intended it to mean." *Gilchrist v. Chester*, 307 Md. 422, 424 (1986) (alteration in original) (quoting *Bd. of Trs. of State Colls. v. Sherman*, 280 Md. 373, 380 (1977)). Where the language of a deed "is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed." *Gilchrist*, 307 Md. at 424 (quoting *Sherman*, 280 Md. at 380). "[I]f the deed . . . [is] clear and unambiguous, in the absence of fraud and mistake, there [is] no need to construe it through the use of extrinsic evidence." *Gilchrist*, 307 Md. at 425.

Turning to the Brady deed, we conclude that its terms are unambiguous in that it did not create an easement over the disputed property, but rather, conveyed the disputed property to the State in fee simple absolute. Initially, we note that there is no allegation of fraud or mistake. In the granting clause of the Brady deed, for consideration of one dollar, Ms. Brady did "*grant* and convey unto the State of Maryland, to the use of the State Roads Commission of Maryland, its successors and assigns, *forever in fee simple*, all our right, title, and interest, free and clear of liens and encumbrances." (emphasis added). As for the property conveyed, the deed conveyed "all the land, together with the

18

appurtenances thereto belonging, or in any wise appertaining, *lying between the lines designated 'right of way line'* as shown and/or indicated on [Plat 1919]." (emphasis added). Pursuant to § 2-101 of the Real Property Article, the word "grant" in a deed "passes to the grantee the *whole interest* and estate of the grantor in the land mentioned in the deed *unless* a limitation or reservation shows, by implication or otherwise, a different intent." (emphasis added). In this case, the Brady deed unambiguously conveyed a fee simple interest: the Brady deed "grant[ed]" the "whole interest" mentioned in the deed— "forever in fee simple"—and conveyed the property "lying between the lines designated 'right of way line,'" which included the disputed property. *See* Md. Code Ann., Real Prop. § 2-101. And, as discussed more fully below, the Brady deed does not contain any express reservation or limitation evidencing a different intent.

While "the terms 'right-of-way' and 'easement' are synonymous," *Gregg Neck Yacht Club, Inc. v. County Comm'rs of Kent County*, 137 Md. App. 732, 754 (2001) (quoting *Chevy Chase Land Co. v. United States*, 355 Md. 110, 126 (1999)), this language in the Brady deed did not convey an easement. "An express easement by reservation arises when a property owner conveys part of his property to another, but includes language in the conveyance that creates a right to use some part of the transferred land as a right-of-way." *Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 753 (noting that "[a]n easement is 'a non[-]possessory interest in the real property of another'" (second alteration in original) (quoting *Boucher v. Boyer*, 301 Md. 679, 688 (1984))). Notably, "when a deed conveying a right-of-way fails to express a clear intent to convey a different interest in land, a presumption arises that an easement was

19

intended." *Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 755 (quoting *Chevy Chase Land Co.*, 355 Md. at 128). Here, there is no such presumption because the Brady deed expresses a clear intent to convey the property "forever in fee simple." *Cf. Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 761-63 (holding that the deed conveyed an easement where the deed conveyed a right-of-way but "omitted any mention of the term 'fee simple'"). The Brady deed contained no language creating a right to use the disputed property as a right-of-way. Instead, the Brady deed merely identified the property conveyed as the land "lying between the lines designated 'right of way line' as shown . . . on [Plat 1919]," i.e., the disputed property. This language was merely the legal description; it did not convey a right-of-way. *See Gilchrist*, 307 Md. at 426 ("[I]n the absence of accompanying restrictive language, the plat[, which referred to the land as a 'school parcel,'] does not do anything more than identify the property being conveyed. . . . [T]he legal description is just that and nothing more. It does not demonstrate the *interest* in the property being conveyed.").

Separate from the paragraph conveying the disputed property in fee simple absolute, the Brady deed further granted the following easement to the State:

> AND the grantors do further grant to the State of Maryland to the use of the State Roads Commission of Maryland, its successors and assigns, the right to create, use and maintain on the land shown hatched . . . on the above mentioned plat,[8] such drainage structures, stream changes and facilities as are necessary . . . to adequately drain the highway and/or adjacent property and such slopes as are

---

[8] Plat 1919 does not contain any such hatch marks, but the plat does indicate the "easement area" to be two narrow strips of land outside of the "right of way line[s]" located on either side of Bay Front Drive. *See* Appendix C.

20

necessary to retain the said highway and/or adjacent property, it being understood between the parties hereto, however, that at such time as the contour of *the land over which this easement is granted* is changed so that the easement required for slopes *is no longer necessary to support or protect the property conveyed in fee simple*, then said easement for slopes *shall cease to be effective*.

At oral argument, Wilkinson relied on this paragraph to support his contention that the disputed property was conveyed as an easement. The "easement for slopes" to drain the planned highway and maintain the slopes along the planned highway, however, is separate from the disputed property that was conveyed by fee simple absolute. Indeed, the deed states that this "easement for slopes shall cease to be effective" when it "is no longer necessary to support or protect *the property conveyed in fee simple*." (emphasis added). Moreover, as shown on Plat 1919, the "easement area" is the land outside of the "right of way line[s]." Because we determine that the Brady deed did not convey the disputed property as an easement, we need not consider Wilkinson's arguments regarding abandonment and termination of an easement by estoppel.[9] We conclude that the Brady deed is unambiguous and conveyed the disputed property in fee simple absolute, thus there is no need to consider extrinsic evidence as suggested by Wilkinson.[10]

---

[9] A fee simple interest cannot be lost by abandonment. *Cristofani v. Bd. of Educ. of Prince George's County*, 98 Md. App. 91, 91 (1993). And because we conclude that no easement over the disputed property was conveyed, there is consequently no easement to be terminated by estoppel.

[10] In support of his contention that the Brady deed is ambiguous, Wilkinson cites to several forms of extrinsic evidence and claims that the court erred by not considering such evidence. For instance, Wilkinson would have this Court consider an option contract that pre-dates the Brady deed, land surveys from the 1980s depicting various termination points for Bay Front Drive, and letters from the State Highway Administration and the Department of Public Works expressing different opinions about

Lastly, as an alternative argument, Wilkinson maintains that the disputed property was conveyed in fee simple determinable rather than fee simple absolute because the Brady deed describes the State's purpose for obtaining the disputed property. We assume, without deciding, that the fee simple determinable issue was not preserved and exercise our discretion to consider the issue. *See* Md. Rule 8-131(a) (providing that an appellate court has the discretion to hear issues not raised in the circuit court "if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal").

The Brady deed provides, in relevant part:

> [T]he State Roads Commission of Maryland . . . finds it necessary to acquire land, easements, and or rights, etc., . . . in order to lay out, open, establish, construct, extend, widen, straighten, grade and improve, etc., . . . and[/]or improve in any manner a highway and/or bridge, . . . and, thereafter use, maintain and/or further improve said highway and/or bridge . . . .

The Brady deed also states that "the laying out of said highway and/or bridge and their appurtenances, in addition to being required for public convenience, necessity and safety, is a material benefit to the undersigned." Wilkinson claims if the deed conveyed the

---

the nature of the interest conveyed to the State. Wilkinson suggests that "[i]f the Brady deed was unambiguous, . . . there would not be this level of confusion regarding the interest granted." Our task, however, is to objectively consider the language of the deed to ascertain its meaning; it is improper to consider extrinsic evidence to determine whether a deed's language is ambiguous. *See Calomiris v. Woods*, 353 Md. 425, 435-39, 447 (1999) (holding that, where a provision in a mortgage contract was unambiguous, the court erred in awarding summary judgment based on extrinsic evidence to interpret the provision). Because we conclude the deed is unambiguous, we need not consider extrinsic evidence. *See Gilchrist*, 307 Md. at 425.

22

disputed property in fee simple absolute, there would be no need for the State to delineate the specific purpose for obtaining the land.  The Brady deed further provides that the disputed property is conveyed "forever in fee simple . . . so far as our property and/or our rights may be affected by the said proposed highway and/or bridge and the appurtenances thereto belonging, or in any wise appertaining."  Wilkinson claims that this "proposed highway" language acts as a reversionary clause and reverts the property to Ms. Brady's successors in interest (here, Wilkinson) because the highway was never constructed.

We disagree with Wilkinson's contentions and conclude that the Brady deed did not convey the disputed property in fee simple determinable.  Even though the Brady deed described the State's purpose for obtaining the disputed property, a statement of purpose does not automatically create a fee simple determinable:

> If the deed or will creates a fee, a mere statement of the purpose of the grant or devise is not sufficient to reduce the fee simple absolute to a determinable fee, an easement, nor to a fee upon condition subsequent.  A statement of purpose will not alone "debase" a fee.

2 *Thompson on Real Property* § 17.05, at 617-18 (3d Thomas ed. 2014) (footnotes omitted); *see also Columbia Ry., Gas & Elec. Co. v. South Carolina*, 261 U.S. 236, 249 (1923) ("[T]he conveyance was absolute and for a valuable consideration, and a mere purpose to attain a particular end . . . could not have the effect of debasing the fee.").  The Court of Appeals has similarly stated:

> [W]hen the language of an instrument does not clearly indicate that grantor's intention that the property is to revert to him in the event it is diverted from the declared use, the instrument does not operate as a restraint upon alienation of the property, but merely expresses the grantor's confidence

23

that the grantee will use the property so far as may be
reasonable and practicable to effect the purpose of the grant.

*Gordon v. City of Baltimore*, 258 Md. 682, 704 (1970) (alteration in original) (quoting

*Sands v. Church of Ascension & Prince of Peace*, 181 Md. 536, 542 (1943)).  While the

Brady deed specified that the purpose of conveying the disputed property was to create a

highway, such a statement of purpose does not debase the fee.  *See, e.g.*, *Rydzewski v.*

*Vestry of Grace & St. Peter's Church*, 145 Md. 531, 535 (1924) (concluding that a deed

provision, which conveyed land to a church and "declared that the property was to be

used for a certain purpose[,] d[id] not make the estate conveyed an estate on condition").

Furthermore, there is no express reversion of property interest nor reversionary

clause in the Brady deed.  "[T]he language of a deed must be sufficiently definite and

clear in order to create a reservation or exception" and "[i]n accord with the general rule

that deeds are to be construed against the grantor, exceptions and reservations are to be

narrowly construed."  *Conrad/Dommel, LLC v. W. Dev. Co.*, 149 Md. App. 239, 276-77

(2003) (quoting 9 *Thompson on Real Property* § 82.09(c), at 597-98 (2d ed. 1999)).  The

"proposed highway" language does not act as a reversionary clause and nothing in the

Brady deed indicates that if the State did not construct the highway, the disputed property

would revert to Ms. Brady or her successors-in-interest.  *See Columbia Bldg. Co. v.*

*Cemetery of the Holy Cross*, 155 Md. 221, 229 (1928) (holding that a provision in a deed,

which granted land "to be held and used as a cemetery," was not enforceable as a

condition subsequent where the provision did not include an intention that the land

should revert in the event changed conditions made it impracticable to use the land as a cemetery).

The 1988 deed subsequently conveyed the disputed property to St. Mary's County. It conveyed "all right, title and interest of the Grantors in and to all the land, together with the appurtenances thereto belonging, or in anywise appertaining, lying between the lines designated 'right of way line' as shown and/or indicated on . . . plat[] . . . 1919." The 1988 deed specified that such land was "all of the land which by deed recorded August 14, 1945 . . . was conveyed by Joan K. Brady to the State of Maryland to the use of the State Roads Commission of Maryland." The 1988 deed therefore conveyed the entire interest conveyed to the State by the Brady deed. Consequently, the County owns the disputed property in fee simple absolute, and the court did not err in granting the County's motion for summary judgment on its declaratory judgment claim and did not err in denying Wilkinson's motion for summary judgment.

## II. THE COURT ERRED IN DETERMINING THAT THERE WAS NO PUBLIC ROAD SOUTH OF STATION MARKER 14.

We now turn to the issues raised by the Aikens' in their cross appeal. In granting the County's motion for summary judgment, the court found that "the County established, built, paved and maintained the Northern part of Bay Front Drive only" and that "the County placed an 'End of County Maintenance' sign at or around Station Marker 14." The court concluded that "the disputed property is not a public road, as a matter of law" and that "[n]o public road was established or exists after [Station Marker 14], though there exists to the South of the paved portion a gravel private road, before the

25

strip of land in dispute." Consequently, the court determined that Counts I, III, IV, and V of the Aikens' cross and counter complaint failed as a matter of law because the Aikens did not "show that they have a valid interest in the disputed property, whether as adjoining landowners or members of the public" because the Aikens' "claims are all based on the incorrect legal conclusion that there is, or was, a public road on the disputed property."

The Aikens contend that the court erred in determining that no public road was established or exists south of Station Marker 14. The County argues that no public road exists on the disputed property. Wilkinson agrees with the County. We determine that the court erred in concluding that no public road was established after Station Marker 14. We explain.

A public road may be established by one of three legal methods: (1) public authority; (2) dedication; or (3) long, uninterrupted use by the public as a road, for twenty years or more, "which, though not strictly prescription, yet bears so close an analogy to it that it is not inappropriate to apply to the right thus acquired the term prescriptive." *Thomas v. Ford*, 63 Md. 346, 351-52 (1885); *see also Clickner v. Magothy River Ass'n*, 424 Md. 253, 269-70 (2012). As there is no genuine dispute of material fact, we review this issue as a matter of law. Because we determine that a public road was created by dedication, we need not address prescription.[11] We do, however, briefly discuss public

---

[11] The third method of creating a public road is by long use by the public or, in other words, a prescriptive easement, *see Clickner*, 424 Md. at 269-71 (citing *Thomas*, 63 Md. at 351-52), which "share[s] substantially the same elements" as adverse possession. *Breeding v. Koste*, 443 Md. 15, 34-36 (2015) (relying on adverse possession law in cases

26

authority as the court and the Aikens appear to blur the line between public authority and dedication. We then address dedication.

## A. Public Authority

The first method of creating a public road is by condemnation by a public authority. *See Thomas*, 63 Md. at 355 (stating that a public road may have "its origin by condemnation, dedication[,] or prescription"). Here, the disputed property was not obtained by condemnation but instead was conveyed from Ms. Brady to the State in fee simple absolute.

In its opinion, the court stated that, pursuant to the first method, "a public road may be shown by its recordation in the official plat recording a subdivision." To support this proposition, the court cited to *Whittington v. Good Shepherd Evangelical Lutheran Church of Palmer Park*, 236 Md. 185 (1964), *Mayor of Rockville v. Geeraert*, 261 Md. 709 (1971), and *Boucher v. Boyer*, 301 Md. 679 (1984). These three cases, however, concerned the second method of creating a public road—dedication—not condemnation by public authority. *See Whittington*, 236 Md. at 192 (determining that, pursuant to an

---

involving prescriptive easements). The existence of a public road "may be established by evidence of an uninterrupted user by the public for twenty years; the presumption being that such long continued use and enjoyment by the public of such way had a legal rather than an illegal origin." *Thomas*, 63 Md. at 352. The Aikens do not appear to contend that a public road was created via this third method and, in any event, "title to property held by a municipal corporation in its government capacity, for a public use, cannot be acquired by adverse possession." *Siejack v. Mayor of Baltimore*, 270 Md. 640, 644-45 (1974) ("Property which is held in a governmental capacity or is impressed with a public trust, cannot be disposed of without special statutory authority." (quoting *Montgomery County v. Md.-Wash. Metro. Dist.*, 202 Md. 293, 303 (1953))); *see also Clickner*, 424 Md. at 281 ("As a general rule, permissive use can never ripen into a prescriptive easement." (quoting *Kirby v. Hook*, 347 Md. 380, 393 (1997))).

27

applicable statute, the recordation of a subdivision plat approved by the appropriate public officials "constitutes [both] a dedication and acceptance of the areas on the plat shown as streets, roads, [and] avenues"); *Geeraert*, 261 Md. at 715 ("[I]t has been established in Maryland that proceeding under an appropriate statute, the recordation of a subdivision plat, containing an approval of the appropriate public officials, constitutes both a dedication and acceptance of the areas dedicated to public use without more."); *Boucher*, 301 Md. at 692-93 (stating that "a plat that sets out a street or alleyway creates a presumption that a dedication was intended" and "purchasers who relied upon the plat were entitled to a private right of way [(an implied easement)] over the street or alley regardless of whether the dedication was ever accepted"). We believe that these three cases are more appropriately discussed in the next section concerning dedication.

We also note that the Aikens posit that the State Roads Commission "was a 'public authority' authorized to create roads" and that it did so by "survey[ing] and plat[ting] a road bounded by 'Right-of-way' lines and fil[ing] it in the land records on a properly prepared plat." In other words, they argue that the State Roads Commission created a public road by filing Plat 1919, which laid out Bay Front Drive between the designated right-of-way lines, because it is a public entity. We believe that the Aikens' arguments are also better addressed in the next section.

### B.     Dedication

Pursuant to the second method, "[a] completed common law dedication 'requires an offer and acceptance.'" *Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 755 (quoting *Wash. Land Co. v. Potomac Ridge Dev. Corp.*, 137 Md. App. 33, 40 (2001)). First, there

28

must be a "voluntary offer[] to dedicate land to public use." *Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 755 (quoting *City of Annapolis v. Waterman*, 357 Md. 484, 503 (2000)).[12]  The owner's intent to give his or her land over to public use "must be clear and unequivocal." *Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 756 (quoting *Wash. Land Co.*, 137 Md. App. at 41); *see also Smith v. Shiebeck*, 180 Md. 412, 419 (1942) ("[N]o particular form or ceremony is necessary to dedicate land to public use.  No deed is necessary to evidence a dedication, nor any grantee in esse to take title. . . .  [A]ny act of a landowner clearly manifesting such an intention is sufficient.").

Second, an offer to dedicate is generally accepted by one of the four following methods:  "acceptance of a deed or other record; acts *in pais*, such as grading, at public expense; long use; or express statutory or other official action."  *Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 756 (quoting *Wash. Land Co.*, 137 Md. App. at 44).  "Acceptance may occur when the 'appropriate entity assum[es] control and maintenance of the property offered.'"  *Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 755 (alteration in original) (quoting *Waterman*, 357 Md. at 504).  An offer may be accepted by a public authority or the general public.  *N. Beach v. N. Chesapeake Beach Land & Improvement Co. of Calvert County*, 172 Md. 101, 116 (1937).  The acceptance requirement "protect[s]

---

[12] "Ordinarily, the fee owner of land conveys an interest in the land 'to the public; usually to the local government having jurisdiction over the land[,]'" but "[t]he owner retains a fee simple interest in the dedicated parcel, 'subject to an easement for the public.'"  *Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 755 (first quoting *Waterman*, 357 Md. at 506; and then quoting *Maryland-Nat'l Cap. Park & Plan. Comm'n v. McCaw*, 246 Md. 662, 675 (1967)).  As we previously determined, however, the County owns the disputed property in fee simple absolute.

29

municipalities from having someone impose upon them the responsibility for maintenance or repair of streets or highways." *Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 755-56 (alteration in original) (quoting *Waterman*, 357 Md. at 504). Until there is an acceptance, an offer to dedicate may be revoked or modified by the original dedicator or successors-in-interest. *Town of Glenarden v. Lewis*, 261 Md. 1, 4 (1971).

### 1. Offer

First, there was an offer to dedicate the disputed property to public use as evidenced by the Brady deed and Plat 1919. While the court did not specify whether there was an offer as it focused primarily on acceptance in its analysis, we conclude that the record supports proof that Ms. Brady intended to dedicate the disputed property to public use. As illustrated by the Brady deed, Ms. Brady conveyed the disputed property to the State for a public purpose, namely "for a public highway." The Brady deed provided that "the laying out of said highway and/or bridge . . . [is] required for public convenience, necessity and safety." Plat 1919, which is incorporated in the Brady deed, further evidences clear and unequivocal intent to dedicate the disputed property to public use because "when a plat is recorded, it is [generally] presumed that there is an intent to dedicate particular types of land interests to public use, such as roads, parks, etc." *Olde Severna Park Improvement Ass'n v. Gunby*, 402 Md. 317, 330 (2007) ("The offers [to dedicate] are generally, although not exclusively, made by showing roads, parks or similar facilities on plats without any limitations on dedication, and the recording of those plats." (alteration in original) (quoting *Waterman*, 357 Md. at 503-04)). Plat 1919, which was recorded on June 19, 1952 and again on March 26, 1986, lays out the southern

30

portion of Bay Front Drive without any language suggesting that a dedication was not intended, thus raising a presumption there was an intent to dedicate the disputed property to public use. The Brady deed and Plat 1919 constitute clear and unequivocal evidence of an offer to dedicate.

As previously noted, the Aikens argue that the filing of Plat 1919 created a public road because the plat was created by the State Roads Commission, a public authority. To support their argument that the mere filing of Plat 1919 created a public road, the Aikens rely on *Day v. Allender*, 22 Md. 511 (1865), where the Court of Appeals stated that "[t]he existence of a public way is proved either by a copy of the record, or *by other documentary evidence of the proper laying out by the proper authorities, pursuant to statutes*, or by evidence either of immemorial usage, or of dedication of the road to public use." *Id.* at 525 (emphasis added).

Maryland caselaw, however, establishes that, in the absence of a statute that provides otherwise, the filing of a plat merely constitutes an offer, and dedication is not complete until there is acceptance. The Court of Appeals has explained:

> [W]hen a plat is recorded, it is presumed that there is an *intent to dedicate* particular types of land interests to public use, such as roads, parks, etc., and *when that offer of dedication is accepted*, the dedication is complete and the local government will generally have jurisdiction over that land.

*Olde Severna Park Improvement Ass'n*, 402 Md. at 330 (emphasis added); *see also Shapiro v. Bd. of County Comm'rs for Prince George's County*, 219 Md. 298, 302 (1959) ("The mere filing of the plat . . . did not effectuate a complete dedication, but constituted an offer to dedicate which had to be accepted in order to make a final and irrevocable

31

dedication."); *Taussig v. Van Deusen*, 183 Md. 436, 440 (1944) (explaining that "[t]he filing of the plat was nothing more than an offer which does not become a dedication until accepted" where "[t]he avenues and streets laid down on the plat were never actually laid out on the ground" and there was no acceptance by the public); *Harlan v. Town of Bel Air*, 178 Md. 260, 266 (1940) ("[A] deed and plat are insufficient to establish a public highway until the conveyance has been accepted."). Plat 1919, on its own, did not create a public road. It merely evidences an offer to dedicate the disputed property for public use.

Moreover, the Aikens' reliance on *Day v. Allender* is misplaced as subsequent cases in Maryland have explained that, pursuant to an applicable statute, the recording of a subdivision plat may constitute both an offer and an acceptance of the roads or streets depicted on the plat. For instance, as discussed in *Whittington*, the Code of Prince George's County expressly provided that when a subdivision plat is recorded, the portions designated on the plat "as streets, roads, avenues, lanes, alleys and public parks or squares . . . are hereby declared to be forever dedicated to public use." 236 Md. at 190-92. The Court of Appeals determined that, pursuant to the Code, the approval and recording of the subdivision plat constituted both a dedication and acceptance. *Id.* at 192; *see also Maryland-Nat'l Cap. Park & Plan. Comm'n v. McCaw*, 246 Md. 662, 673 (1967) (affirming the rule, "that under the [same] statute [considered in *Whittington*], the dedication to the public is complete and the interest of the public has vested when the subdivision plat is filed"). In *Geeraert*, the applicable section of the Montgomery County Code similarly provided that "[w]hen the (approved) plats are so recorded, those portions

32

. . . designated on the plats as . . . streets . . . shall be and the same are hereby declared to be forever dedicated to public use." 261 Md. at 715. The Court determined that there was "public acceptance of the dedication . . . upon the approval of [the City] and the filing of the plats." *Id.* at 716. It also clarified that, in Maryland, "it has been established . . . that proceeding under an appropriate statute, the recordation of a subdivision plat, containing an approval of the appropriate public officials, constitutes both a dedication and acceptance of the areas dedicated to public use without more." *Id.* at 715. Thus, pursuant to an appropriate statute, "the dedication to the public is complete and the interest of the public has vested when the (approved) subdivision plat is filed." *Id.* (quoting *McCaw*, 246 Md. at 673).

While the State Roads Commission was created and tasked with the power to establish and lay out roads,[13] the Aikens do not point to any state statute or local public law, and we find none, expressly providing that once the State Roads Commission or other public entity approves and records a plat depicting a road in St. Mary's County,

---

[13] Chapter 141 of the Acts of 1908 created the State Roads Commission and granted the Commission "full powers to construct, improve, and maintain public roads and highways." *Huffman v. State Rds. Comm'n of Maryland*, 152 Md. 566, 575 (1927). The Commission was further granted with the power and duty to:

> select, construct, improve and maintain such a general system of improved state roads and highways, as can reasonably be expected to be completed with the funds herein provided in and through all the counties of this state; . . . condemn, lay out, open, establish, construct, extend, widen, straighten, grade and improve, in any manner, any main road, of the system, in any county of this state and establish or fix the width thereof . . . .

*Id.*

dedication is complete and a public road is thereby created. Additionally, the subdivision plat establishing the Scotland Beach neighborhood does not depict Bay Front Drive. *See* Appendix A. We cannot conclude such statutory dedication occurred here. Acceptance of the offer to dedicate is required.

### 2. *Acceptance*

Having determined that there was an offer as evidenced by the Brady deed and Plat 1919, we now turn to acceptance. The court determined that "none of the . . . possible methods of acceptance was utilized." We disagree and conclude that the State accepted the offer to dedicate the disputed property to public use as evidenced by

acceptance of a deed or other record,[14] namely the 1945 deed.  The 1988 deed further

provides support that there was an acceptance.[15]

---

[14] We briefly discuss two other methods of acceptance, acts *in pais* and long use, as applied to the instant case.  First, an offer to dedicate may be accepted by acts *in pais*, such as construction, maintaining, grading, or leveling the road at public expense.  *See Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 756.  Acceptance "may be implied from repairs made and ordered or knowingly paid for by the authority which has the legal power to adopt the street or highway."  *Canton Co. of Balt.*, 124 Md. at 632 (quoting *Pope v. Clark*, 122 Md. 1, 9 (1913)).  While it is undisputed that a majority of Bay Front Drive was paved but the disputed property was not, we note that physically constructing a road is merely one way to prove acceptance.  The County incorrectly asserts that a road, regardless of how it is designed or platted, "does not become a public road *until it is constructed* and there is an (1) acceptance; and (2) a dedication by the government." (emphasis added).  Construction or maintenance of a road is merely one way to evidence acceptance of an offer to dedicate—construction is not required to create a public road contrary to the County's belief.  *See Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 756 (explaining that "acceptance . . . is shown by *one of four methods*," which are "acceptance of a deed or other record; acts *in pais*, such as grading, at public expense; long use; *or* express statutory or other official action" (emphasis added)).

Second, acceptance may also be proven by long use by the general public, such as showing "an entry upon the land and enjoying the privilege offered."  *N. Beach*, 172 Md. at 116.  "The user by the public . . . need not be for such a length of time as would be sufficient to establish an easement by prescription or to acquire title to the land by adverse possession."  *Id.*  All that "is required is for the user to be continued for so long a time as will establish a clear intention on the part of the public to accept."  *Id.* Nevertheless, "the mere fact that the public may have used a way over private property for many years is not sufficient to raise the presumption that the way has been accepted by the public authorities as a public street."  *Blank v. Park Lane Ctr., Inc.*, 209 Md. 568, 576 (1956); *see also Harlan*, 178 Md. at 266 ("Evidence that the public may have used a way over private property for some years does not of itself establish the presumption that it has been accepted by the authorities.").  The County admitted, in its motion for summary judgment and appellate brief, that "the only continued use by the public has been pedestrian use" and that it "has permitted only public pedestrian use of the property" to access the beach.  The court found that "[t]here has only been public pedestrian use of the disputed land to traverse the disputed property to get to the beach."  It would be, however, inappropriate for this Court to conclude that acceptance has occurred via long use by the public where there was no finding, or evidence in the record, indicating how long the public has used the disputed property to access the beach.

First, the State Roads Commission, acting on behalf of the State, assumed control of the disputed property via the 1945 deed. *Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 755 (noting that acceptance may occur by assuming "control and maintenance" of the offered property (quoting *Waterman*, 357 Md. at 504)). The disputed property was conveyed to the State Roads Commission "as part of the Maryland State Roads System," to "use, maintain and/or further improve said highway and/or bridge." The disputed property remained in the State's control until 1988, when it transferred its obligations to the County. The State accepted the offer to dedicate by accepting the property via the 1945 deed.

In the 1988 deed, titled as "Road Conveyance Deed," the State Highway Administration, acting on behalf of the State, conveyed the disputed property to the County. The 1988 deed, which was recorded, refers to Bay Front Drive as a whole—it

---

[15] We also note that, based on our review of the record, there is no evidence that the offer to dedicate lapsed, or was revoked or refused. There is no evidence that the State or the County disclaimed its interest in the disputed property or that its use was inconsistent with that of a public road. *See Mauck v. Bailey*, 247 Md. 434, 444 n.1 (1967) ("For an offer of dedication to be considered to be lapsed, revoked or refused because it was not accepted within a reasonable time, the municipality must have affirmatively intended not to accept or must have allowed the dedicator or his successors to make valuable improvements without objection."); *Hackerman v. Mayor of Baltimore*, 212 Md. 618, 625 (1957) (explaining that it cannot be claimed that an offer was "was not accepted within a reasonable time unless the municipality has shown affirmatively an intent not to accept, or has allowed the owner to make valuable improvements without objections so that he would be materially injured were the dedication insisted upon"); *cf. United Fin. Corp. v. Royal Realty Corp.*, 172 Md. 138 (1937) (determining that "the failure of the municipality to act on [an offer] for over 50 years, coupled with the use by the owners of the land within the street lines, for purposes inconsistent with its character as a public highway, and the acceptance of taxes thereon, throughout that period, must be construed as a definite refusal to accept [the offer]").

36

does not treat the portion comprising the disputed property any differently than the paved northern portion. The 1988 deed first states that the State Highway Administration "has constructed, or is about to construct (a) certain State Highway(s) and/or Bridge(s) known and designated as SM 154-001-511 Bay Front Drive (Formerly Ed Road) Scotland Beach to Point Lookout – County Road No. 3411." The 1988 deed further describes a "rights of way conveyed by the State Highway Administration" as "Bay Front Drive (formerly Ed Road)." The property conveyed included the land "BEING ALL OF THE BED of the road known as Bay Front Drive (formerly Ed Road), County No. 3411" and "BEING ALL OF THE LAND which by deed recorded August 14, 1945 . . . was conveyed by Joan K. Brady to the State of Maryland to the use of the State Roads Commission of Maryland." It is telling that Bay Front Drive is called a "County Road."

In addition, the 1988 deed expressly references Plats 1918, 1919, and 6016 to describe the land conveyed, which depict the entirety of Bay Front Drive, including the portion constituting the disputed property. *See Boucher*, 301 Md. at 689 (explaining the common law rule that when a deed references a plat, it "incorporates that plat as part of the deed"). The 1988 deed acknowledges that the plats were recorded and describes the plats as "show[ing] the land, easements, rights and *controls of access* which have been determined by said 'Grantor' as necessary to be retained by the State for the construction, operation, maintenance, use and protection of the highway(s) and/or bridge(s) constructed, or to be constructed, as aforesaid." (emphasis added). Plats 1918 and 1919 do not treat the portion of Bay Front Drive over the disputed property any differently than

37

the northern portion and do not single out any portion of the road—Bay Front Drive is referred to as a whole.

The County moreover accepted the 1988 deed subject to "each and every reservation, restriction, condition, covenant and control set forth in this instrument of writing." And while the 1988 deed specified that the land conveyed was "no longer needed by [the State Highway Administration] in connection with the construction, operation, maintenance, use and protection of *the State Highway System*," the 1988 deed is titled as a "Road Conveyance Deed," indicating that the land was conveyed to the County for a transportation purpose. In addition, the 1988 deed states: "WHEREAS, under the provisions of § 8-309 of the Transportation Article of the Annotated Code of Maryland, it is necessary for the Board of Public Works of Maryland to join in the conveyance of any land by the State Highway Administration of the Department of Transportation."

Upon closer inspection of § 8-309 of the Transportation Article, subsection (a) explains that "[t]he purpose of this section is to return unneeded land to the tax rolls of the counties and to make this land available for use by a county or municipality *for any transportation purpose*." 1988 Md. Laws, ch. 489, § 8-309(a) (emphasis added).[16] Section 8-309 further provides that "if land acquired under this subtitle is not needed for present or future State, county, or municipal transportation purpose or other public purposes," the land shall be disposed "as soon as practicable after the completion or

---

[16] The current version of this statute provides for the same. *See* Md. Code Ann., Transp. § 8-309(a)–(b).

abandonment of the project for which the land was acquired." 1988 Md. Laws, ch. 489, § 8-309(b)(1). And "[i]f the land is not needed for a county or municipal transportation purpose, the person from whom the land was acquired or the successor in interest of that person has the right to reacquire the land." 1988 Md. Laws, ch. 489, § 8-309(b)(2)(ii). The 1988 deed conveyed the entire property within the right of way lines depicted on Plats 1918, 1919, and 6016—the entirety of Bay Front Drive. The conveyance to the County was for a transportation purpose. The disputed property additionally was not offered or deeded back to Ms. Brady or her successors in interest, thus indicating that the land conveyed was not determined to be "not needed for a county or municipal transportation purpose." 1988 Md. Laws, ch. 489, § 8-309(b)(2)(ii). The 1988 deed and the relevant plats refer to Bay Front Drive as a whole and do not treat the southern portion of Bay Front Drive after Station Marker 14 any differently than the northern portion of the road. Based on all of the foregoing, the offer to dedicate was accepted.

Furthermore, the County's 2017 Ordinance "To Close Bay Front Drive (Extended)," while not evidence of acceptance via express statutory or other official action, effectively confirms that there was an acceptance of the offer to dedicate before the Ordinance was issued. We disagree with the circuit court that the Ordinance was "not relevant or material" and "a mere formality." The County acknowledged that Bay Front Drive is a "public road," and it exercised its authority to close public roads within St. Mary's County. The Ordinance specified that the County "initiated a proposal that a portion of the right of way designated as Bay Front Drive, *a public road*, . . . be closed." (emphasis added). The County concluded "that the public interest will best be served by

39

closing the said portion of Bay Front Drive," which included the disputed property, and consequently ordained that the "portion of the road designated as Bay Front Drive . . . be closed."

In issuing the Ordinance, the County acted pursuant to Chapter 109 of the Code of St. Mary's County, which provides that the "County Commissioners of St. Mary's County are authorized and empowered to control and regulate the *public roads* and bridges in the county." St. Mary's County Code § 109-1 (2017) (emphasis added). Chapter 109 further provides that the County may, by petition, "[c]ondemn, lay out, open, extend and make new public roads" and "*close up*, in whole or in part, *any existing public road*." *Id.* § 109-2 (emphasis added). If the disputed property was never established as a public road, then the County would not have had the authority to close it pursuant to Chapter 109.

Moreover, it is telling that during the public hearings on the petition to close a portion of Bay Front Drive, the County attorney stated that "as an unimproved section, [the disputed property] creates a potential liability . . . that attaches to the issues of maintenance of public streets." As noted previously, when an offer is accepted, municipalities have "the responsibility for maintenance or repair of [the] streets or highways." *Gregg Neck Yacht Club, Inc.*, 137 Md. App. at 755-56 (quoting *Waterman*, 357 Md. at 504). The County attorney thus recommended that the County "*clos[e] the road as public highway* . . . to limit potential liability of the County in the event of some sort of motor vehicle accident" and advised the County to "adopt the proposed ordinance to simply close the road, *declassify it* [out of the county system] . . . *as a public highway,*

40

*to protect the County.*"  In issuing the Ordinance, the County followed the County attorney's recommendation.  The Ordinance was not "surplusage" as concluded by the court but supports our interpretation that the 1945 and 1988 deeds and Plats 1918 and 1919 evidence the County's acceptance.

We determine that there was a complete dedication and that the court erred in concluding that no public road was created south of Station Marker 14 and consequently erred in granting the County's motion for summary judgment as the Aikens' Counts I, III, IV, and V are premised on the existence of a public road.  For the same reason, the court additionally erred in granting summary judgment in favor of Wilkinson as to the Aikens' Counts III and V.  Accordingly, we vacate and remand for further proceedings on the Aikens' Counts I[17] and III as against both the County and Wilkinson, Count IV as against the County, and Count V as against Wilkinson.[18]  On remand, the court should take into consideration that the portion of Bay Front Drive over the disputed property was statutorily closed in 2017.

---

[17] Count I of the Aikens' cross and counter complaint was a claim for a declaratory judgment.  Upon consideration of Count I on remand, the circuit court should consider that its declaration that the County owns the disputed property in fee simple, as discussed in Section I, was correct.  As explained in Section II, however, the court cannot rely on its determination that the disputed property was not a public road.  Accordingly, the court should re-issue a declaratory judgment concerning the Aikens' Count I on remand.  *See GPL Enter., LLC v. Certain Underwiters at Lloyd's*, 254 Md. App. 638, 663-64 (2022) (holding that the circuit court erred in dismissing a claim for a declaratory judgment without declaring the parties' rights as required).

[18] We do not remand Count V against the County because, as explained in Section IV of this opinion, the Aikens failed to plead compliance with the notice requirement of the Local Government Tort Claims Act.

**III.** **THE COURT DID NOT ERR IN DENYING THE AIKENS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING THE AIKENS' CLAIM TO QUIET TITLE.**

The Aikens argue that they were entitled to summary judgment on their quiet title claim (Count II) against Wilkinson. They claim that they were not required to provide notice to or join adjacent property owners and further argue that the County cannot defeat their claim to quiet title "by casting doubts on the Aikens title" but instead "must come forward with a claim of its own." In response, the County asserts that the Aikens failed to provide notice to or join adjacent property owners and the "others" who allegedly challenged the Aikens' ownership of the property at issue and, accordingly, that the court did not err in dismissing Count II. Wilkinson does not contest the Aikens' quiet title claim in this appeal.

The purpose of a quiet title action is to "protect the owner of legal title 'from being disturbed in his possession and from being harassed by suits in regard to his title by persons setting up unjust and illegal pretensions.'" *Porter v. Schaffer*, 126 Md. App. 237, 260 (1999) (quoting *Wathen v. Brown*, 48 Md. App. 655, 658 (1981)). "[T]he plaintiff has the burden of establishing both possession and legal title by 'clear proof.'" *Porter*, 126 Md. App. at 260 (quoting *Steward v. May*, 111 Md. 162, 173 (1909)). The quiet title action statute, § 14-108 of the Real Property Article, provides in its entirety:

> (a) Any person in actual peaceable possession of property, or, *if the property is vacant and unoccupied, in constructive and peaceable possession of it*, either under color of title or claim of right by reason of the person or the person's predecessor's adverse possession for the statutory period, when the person's title to the property is denied or disputed, or when any other person claims, of record or otherwise to own the property, or

any part of it, or to hold any lien encumbrance on it, regardless of whether or not the hostile outstanding claim is being actively asserted, and if an action at law or proceeding in equity is not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim, the person may maintain a suit *in accordance with Subtitle 6 of this title* in the circuit court for the county where the property or any part of the property is located to quiet or remove any cloud from the title, or determine any adverse claim.

(b) The proceeding *shall be deemed in rem or quasi in rem* so long as the only relief sought is a decree that the plaintiff has absolute ownership and the right of disposition of the property, and an injunction against the assertion by the person named as the party defendant, of the person's claim by any action at law or otherwise. *Any person who appears of record, or claims to have a hostile outstanding right, shall be made a defendant in the proceedings.*

(emphasis added). Stated otherwise, § 14-108(b) provides that a person who claims to have an adverse claim or "a record owner of property that is subject to an action to quiet title [are] necessary part[ies] and must be joined as . . . defendant[s] to the action." *Estate of Zimmerman v. Blatter*, 458 Md. 698, 732 (2018).

Furthermore, § 14-108(a) instructs an action to quiet title to be maintained "in accordance with Subtitle 6 of this title," which was added by the General Assembly in 2016. *See Zimmerman*, 458 Md. at 705. In turn, §§ 14-601 to 14-621 of the Real Property Article "set forth general procedures governing actions to quiet title and provides specific procedures by which a plaintiff may file an action to quiet title and join all necessary defendants, despite the existence of a defendant who is not known to the plaintiff." *Id.* at 722. Specifically, § 14-608(a) requires that "[t]he plaintiff *shall* name as defendants . . . the persons having adverse claims to the title of the plaintiff that are *of*

43

*record* or *known to the plaintiff* or *reasonably apparent from an inspection of the property* against which a determination is sought." (emphasis added). If a defendant is unknown to the plaintiff, § 14-609(a) provides that "the plaintiff shall state in the complaint that the name is unknown and shall name as parties all persons unknown in the manner provided in § 14-613 of this subtitle." Section 14-613 details that unknown defendants may be named as: "all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to the plaintiff's title, or any cloud on the plaintiff's title to the property."

In denying the Aikens' motion for summary judgment and dismissing Count II without prejudice, the court determined that Count II failed as a matter of law because the Aikens failed to comply with § 14-108 and failed to join necessary parties. In Count II, the Aikens alleged that that they are in constructive and peaceable possession of Lots 23, 24, and 25, which are vacant and unoccupied. They further alleged that "[t]he Wilkinsons *and others* have asserted a right to use the Aiken property and/or questioned the Aikens' ownership and have otherwise created a cloud on the Aikens' title."[19] (emphasis added). We agree with the court that the Aikens did not comply with § 14-108 by failing to join these "others" as defendants.

First, we agree with the court's conclusion that William Reagan, a neighboring landowner, should have been joined. In their motion for summary judgment, the Aikens

---

[19] The Aikens noted that their quiet title claim is subject to the easements held by the County and the Maryland Department of Natural Resources to maintain erosion control systems on the property.

asserted that "[t]here is no dispute between the Aikens and the Reagans concerning the boundary" and, in an attached affidavit, Christopher Aiken attested that "[t]he garage associated with the Reagan property is on land owned by the Reagans." As noted above, however, § 14-108(b) provides that "[a]ny person who appears of record, or claims to have a hostile outstanding right, shall be made a defendant in the proceedings." Section 14-608(a) further explains that "the persons having adverse claims to the title of the plaintiff that are . . . reasonably apparent from an inspection of the property against which a determination is sought" shall be named as defendants. The court determined that the Chesapeake Trails Surveying, LLC's boundary survey indicated that there is a dispute concerning Lot C, which is owned by Mr. Reagan (Liber 533, folio 119),[20] and the adjacent Lot 25, claimed in its entirety by the Aikens in their cross complaint.[21] The survey, excerpted below, shows that an existing garage is built over Lot C (which we have highlighted in yellow)[22] and Lot 25 (which we have highlighted in blue):

---

[20] We take judicial notice of Mr. Reagan's deed pursuant to Rule 5-201.

[21] As noted by the court, the Aikens attempted to amend Count II "orally and through motions . . . by altering their claim of ownership to only half of Lot 25." More specifically, the Aikens asserted that the Reagans and the Aikens "each own part of what was originally platted as Lot 25 and the Reagan's garage is entirely on land owned by the Reagans." The Aikens, however, did not seek leave to amend their cross complaint and did not file an amended cross complaint. The court concluded that the Aikens could not alter their claim to half of Lot 25 orally or through motions.

[22] Although the boundary of Lot C was not expressly delineated by the court, its opinion can be reasonably understood as referring to the yellow highlighted lot located at the top of the excerpt. The top of the excerpt points west and the fantail of Bay Front Drive is located on the right side of the excerpt.

45



Mr. Reagan appears "of record" and it is "reasonably apparent from an inspection of the property," as indicated by the boundary survey, that Mr. Reagan should have been named as a defendant. Real Prop. §§ 14-108(b), 14-608(a). Moreover, given that the Aikens allege that they own the entirety of Lot 25, Mr. Reagan may be a person who claims to have a hostile outstanding right with respect to Lot 25 because the survey shows that one-half of the garage is built on Lot C and the other half is built on Lot 25. Mr. Reagan was required to be joined.

Second, the Aikens asserted that "others" have created a cloud on the Aikens' title. The Aikens, however, did not name these "others" in their counter complaint or any

pleading. In an affidavit attached to their motion for summary judgment, Christopher

Aiken attested that he is "not aware of any person that makes a specific claim of title to

our property that is not a party to this case" but that they "have, however, been subjected

to . . . rumors and general accusations by members of the community that [they] own less

than what is in the deeds." Even if the Aikens were unaware of what members of the

community were casting doubt on their title, §§ 14-609(a) and 14-613 outline the

procedures for naming unknown persons in a complaint, which the Aikens did not follow.

The Aikens' assertion that "others" have created a cloud on their title "leaves unclear

who is directly interested in the case, much less whether the directly interested people

know of the case." *Rounds v. Maryland-Nat'l Cap. Park & Plan. Comm'n*, 441 Md. 621,

647 (2015) (quoting *Rounds v. Maryland-Nat'l Cap. Park & Plan. Comm'n*, 214 Md.

App. 90, 112 (2013)).[23] We conclude that the circuit court did not err in denying the

---

[23] The court relied on *Rounds v. Maryland-National Capital Park & Planning Commission*, 441 Md. 621 (2015), in denying the Aikens' motion for summary judgment. We note that the court inaccurately stated that in *Rounds*, "[n]o statute required notice or joinder and, yet, the Court of Appeals nevertheless held that both were required." But in *Rounds* there was an applicable statute that required joinder: the Declaratory Judgment Act, which provides that "[i]f declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party." Md. Code Ann., Cts. & Jud. Proc. § 3-405(a)(1); *see Rounds*, 441 Md. at 648 (explaining that the general rule for declaratory judgment actions is that "all persons interested in the declaration are necessary parties" (quoting *Williams v. Moore*, 215 Md. 181, 185 (1957))). Joinder is not required, however, if the non-joined party had knowledge of the litigation and the ability to join but failed to do so. *Rounds*, 441 Md. at 648-49. The Court held that the court did not err in granting the motions to dismiss for failure to join necessary parties. *See id.* at 649-50. The Court explained that the petitioners' assertion in their amended complaint—that the "other adjacent property owners [who were not joined in the case] have agreed not to contest the relief sought herein"—was conclusory and insufficient to demonstrate that the adjacent property owners had knowledge of and ability to join the suit and failed to do so. *Id.* at 647, 649. While *Rounds* involved a

47

Aikens' summary judgment motion and dismissing their claim to quiet title without prejudice.

## IV. THE COURT DID NOT ERR IN GRANTING THE COUNTY'S MOTION FOR SUMMARY JUDGMENT ON THE AIKENS' INTERFERENCE WITH EASEMENT CLAIM.

The Aikens argue that the County's motion for summary judgment should not have been granted on their interference with easement claim (Count V) because "there were material facts at issue concerning notice." Count V alleged that the Aikens and the public have an easement over Bay Front Drive, as a public road, and that Wilkinson "repeatedly erected barriers preventing the Aikens from using Bay Front Drive for ingress and egress to their property."[24] That count also alleged that the County "sporadically removed the barriers" and has "allowed Bay Front Drive to be blocked for extended periods of time—years in some instances." In other words, the Aikens alleged "that the County did not do enough to ensure that the Aikens and the public had access over Bay Front Drive."

The Aikens claim that they were not required to provide statutory notice pursuant to the Local Government Tort Claims Act ("LGTCA") because the County had notice of the circumstances giving rise to their injury. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-

---

declaratory judgment action and this case involves a quiet title claim, the Aikens' assertion that "others" have created on a cloud on their title suffers from the same issue: it is unclear who is interested in the case.

[24] We note that the court's opinion did not state whether the barriers or obstructions were placed specifically by Wilkinson but only stated that they were erected by someone.

304. The County avers that the Aikens' cross complaint failed to allege that the Aikens provided notice as required by the LGTCA and consequently Count V failed as a matter of law. In addition, the County argues that Count V was barred by governmental immunity because the County was acting in its governmental capacity. The Aikens do not present any argument addressing governmental immunity on appeal.

Under the LGTCA, "a local government [is] liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Cts. & Jud. Proc. § 5-303(b)(1). The LGTCA requires a claimant to notify the local government of its claim, specifying that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury." Cts. & Jud. Proc. § 5-304(b) (detailing that "notice shall be in writing and shall state the time, place, and cause of the injury"). The purpose of the requirement is to provide the local government with notice of "its possible liability at a time when it could conduct its own investigation, . . . while the evidence was still fresh . . . to ascertain the character and extent of the injury and its responsibility in connection with it." *Rounds*, 441 Md. at 642-43 (quoting *Prince George's County v. Longtin*, 419 Md. 450, 466 (2011)).

In the absence of strict compliance, substantial compliance may satisfy the notice requirement. *See Mayor of Baltimore v. Stokes*, 217 Md. App. 471, 480-81 (2014) (listing the common law requirements for substantial compliance). The General Assembly codified the concept of substantial compliance in 2016, when it added § 5-

49

304(e). *Hine v. Prince George's County*, No. TDC-20-2929, 2021 WL 5882615, at *3

(D. Md. Dec. 9, 2021) (applying § 5-304(e) of the LGTCA); *Edwards v. Montgomery*

*Coll.*, No. TDC-17-3802, 2018 WL 4899311, at *8 (D. Md. Oct. 9, 2018) (same).[25] That

subsection provides: "This section does not apply if, within 1 year after the injury, the

defendant local government has actual or constructive notice of: (1) The claimant's

injury; or (2) The defect or circumstances giving rise to the claimant's injury." Cts. &

Jud. Proc. § 5-304(e). Thus, pursuant to § 5-304(e), a claimant who does not provide

notice is not barred from proceeding with a claim if the local government has actual or

constructive notice of the injury or the circumstances that gave rise to the injury.[26]

Plaintiffs are required to plead their strict or substantive compliance with the

LGTCA's notice requirement. *Hansen v. City of Laurel*, 420 Md. 670, 694 (2011). The

failure to do so subjects the complaint to dismissal because the notice requirement is a

condition precedent to maintaining a suit against a local government. *Id.* at 682-85, 694.

---

[25] It is this Court's policy to permit "the citation of unreported opinions of federal courts or the courts of other states for persuasive value, provided that the jurisdiction that issued any particular opinion would permit it to be cited for that purpose." *CX Reinsurance Co. Ltd. v. Johnson*, 252 Md. App. 393, 414 n.7 (2021).

[26] In the Fiscal and Policy Note accompanying the bill that became § 5-304(e), the General Assembly explained that the purpose of the section was to "create[] an exception to the notice requirement under the [LGTCA] if, within one year after the injury giving rise to the claim, the defendant local government has actual or constructive notice of the claimant's injury or the defect or circumstances giving rise to the claimant's injury." Md. Dep't of Legis. Servs., Fiscal and Policy Note Revised, H.B. 637, at 1 (2016). The General Assembly noted "that a person who can prove compliance with this actual or constructive notice condition and wishes to file a claim under LGTCA simply needs to comply with the standard three-year statute of limitations for civil actions to proceed with the claim." *Id.* at 3.

Absent strict or substantial compliance, a claim may still proceed if the claimant demonstrates "good cause." Cts. & Jud. Proc. § 5-304(d). If good cause is shown, then the burden is on the local government to "affirmatively show that its defense has been prejudiced by [the claimant's] lack of required notice." *Longtin*, 419 Md. at 467 (quoting Cts. & Jud. Proc. § 5-304(d)).

In granting the County's motion for summary judgment, the court stated that "Count V is barred by the Aikens' failure to provide [a] notice of claim." The court did not address whether the Aikens strictly or substantially complied with the notice requirement, but it explained that Count V failed as a matter of law because the Aikens "fail[ed] to allege that [they] provided a notice of claim to the County as required by the [LGTCA]." We agree.

The Aikens did not plead compliance with § 5-304 as a substantive element in Count V. Indeed, the Aikens do not mention the LGTCA in their cross complaint. "A plaintiff must not only satisfy the notice requirement strictly or substantially, but also plead such satisfaction in [the] complaint." *Hansen*, 420 Md. at 694. On this basis alone, the Aikens' Count V failed for failure to plead compliance with the LGTCA notice requirement.

The Aikens, however, argue that § 5-304(e) of the LGTCA applies and that "the County knew of the circumstances of [their] injury."[27] The Aikens contend that the County had notice under § 5-304(e) because the County knew that the obstructions were

---

[27] The Aikens do not argue strict compliance or good cause.

placed on the disputed property and had admitted as much in its counter complaint and motion to dismiss. Specifically, in the County's counter complaint, the County alleged that Wilkinson placed "No Trespass[ing]" signs and obstructions on the disputed property, which "imped[ed] or block[ed] the County's and the public's access" over the disputed property, that the County requested that Wilkinson remove the obstructions in letters dated in June 2007, June 2009, November 2012, and May 2016, and that the County has removed such obstructions at its own expense. The County stated the same in its motion to dismiss, which was incorporated into its motion for summary judgment. The County's motion to dismiss further had a heading entitled, "Barriers, Obstacles, and 'No Trespassing' Signs Have Been Unlawfully Placed on the County's Property by the Wilkinsons and Have Been Removed by the County." The Aikens argue that because the County's counter complaint and motion to dismiss included these allegations and statements, "the County was on notice of the issues with respect to the blocking of the easement" and thus they were not required to provide notice under the LGTCA.

This argument fails because § 5-304(e) does not apply to claims accruing prior to October 1, 2016. The legislation enacting the subsection provided that § 5-304(e) "appl[ies] only prospectively and may not be applied or interpreted to have any effect on or application to any cause of action arising before the effective date of this Act." 2016 Md. Laws, ch. 624, § 2; *see also* Md. Dep't of Legis. Servs., Fiscal and Policy Note Revised, H.B. 637, at 1 (2016) (explaining that the § 5-304(e) "applies prospectively to causes of action arising on or after the bill's October 1, 2016 effective date"). Here, the Aikens did not attach any evidence to their cross complaint or opposition motion to the

County's motion for summary judgment detailing that their alleged injury arose after October 1, 2016. In their cross complaint, the Aikens did not allege dates on which the alleged obstructions occurred but merely alleged that the County has "allowed Bay Front Drive to be blocked for extended periods of time—years in some instances." The Aikens similarly did not provide any dates in their opposition to the County's motion for summary judgment. Notably, the letters that the County sent to Wilkinson, on which the Aikens rely, predate October 1, 2016. And while there is no date associated with the pictures of the "No Trespass[ing]" signs and other obstructions, the Aikens admitted, in their answers to the County's interrogatories, that they "were able to drive their vehicle over the [disputed property]" on August 6, 2016. They also attached a picture depicting the disputed property with the barriers removed, which they said was taken on August 6, 2016. Based on our review of the record, the Aikens have not provided evidence establishing that a cause of action arose on or after § 5-304(e)'s effective date of October 1, 2016. Therefore, § 5-304(e) is not applicable.[28]

The court was correct in granting the County's summary judgment motion on Count V for failure to plead compliance with the LGTCA's notice requirement.

---

[28] We note that to establish substantial compliance under the LGTCA as it stood before October 1, 2016, the plaintiff must "make[] 'some effort to provide the requisite notice'" and "does 'in fact' give some kind of notice." *Hous. Auth. of Baltimore City v. Woodland*, 438 Md. 415, 428 (2014) (quoting *Ellis v. Hous. Auth. of Baltimore City*, 346 Md. 331, 342-43 (2013)). The notice also must give "requisite and timely notice of facts and circumstances giving rise to the claim." *Id.* Lastly, the notice must "fulfill[] the LGTCA notice requirement's purpose" of "appris[ing] [the] local government of its possible liability at a time when [it] could conduct its own investigation . . . while the evidence was still fresh." *Id.* (third alteration in original).

## CONCLUSION

We conclude as follows: (1) the court did not err in determining that the County owns the disputed property in fee simple, thus we affirm the court's denial of Wilkinson's motion for summary judgment and grant of the County's motion for summary judgment as to Wilkinson's Count I (declaratory judgment); (2) the court erred in determining that there was no public road south of Station Marker 14 and thus erred in granting the County's motion for summary judgment; consequently, we vacate and remand the Aikens' Counts I (declaratory judgment) and III (injunctive relief) as against both the County and Wilkinson, Count IV (inverse condemnation) as against the County, and Count V (interference with easement) as against Wilkinson; (3) the court did not err in denying the Aikens' motion for summary judgment and dismissing the Aikens' Count II (quiet title), and thus we affirm; and (4) the court did not err in granting the County's motion for summary judgment as to the Aiken's Count V (interference with easement) against the County, and thus we affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR ST. MARY'S COUNTY AFFIRMED IN PART AND VACATED IN PART; REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID 50% BY APPELLANT AND 50% TO BE SPLIT EVENLY BETWEEN APPELLEES.**

56



57



58